contract, facts which have arisen since the contract was entered into and show failure to keep material provisions of the contract, are not demurrable.

3. INSTRUCTIONS, § 129*—*what are requisites of instruction directing a verdict.* If an instruction in an action of assumpsit for damages for breach of a contract directs a verdict for either party or amounts to such a direction in case the jury shall find certain facts, it must necessarily contain all the facts which will authorize the verdict directed, and it is immaterial that it does not undertake to instruct the jury as to the whole case but only as to particular parts of the contract.

4. SET-OFF AND RECOUPMENT, § 8*—*when damages may be set off.* Damages incurred by the payment of liens upon a telephone exchange and equipment which had been seized under execution, may properly be set off in an action of assumpsit for damages for the breach of a contract to lease the telephone system.

---

## James Biggs, Appellee, v. Carbondale Building, Loan & Homestead Association, Appellant.

### (Not to be reported in full.)

Appeal from the Circuit Court of Jackson county; the Hon. W. W. DUNCAN, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed May 1, 1915.

### Statement of the Case.

Action in assumpsit by James Biggs against the Carbondale Building, Loan & Homestead Association to recover damages for breach of an agreement to procure fire insurance on plaintiff's property, whereby plaintiff incurred loss. From a judgment for plaintiff, defendant appeals.

The declaration filed by plaintiff, James Biggs, was in assumpsit, and contained the common counts and one special count. The latter set out that defendant,

* See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

172 APPELLATE COURTS OF ILLINOIS.

Biggs v. Carbondale Building, L. & H. Ass'n, 194 Ill. App. 171.

the Carbondale Building, Loan & Homestead Association, was a corporation, under the laws of Illinois, relating to building, loan and homestead associations; that on January 22, 1910, eighteen shares of stock in said association were issued to him and on that day he borrowed of said association the sum of $1,800; that to secure said loan he and his wife executed a note and mortgage to the association on certain real estate and also assigned to it an insurance policy in the "Sun Insurance Office of London" for $1,500, dated August 19, 1908, for a period of three years; that at the time of making said loan defendant had adopted the following by-law, pertaining to insurance policies, which was then in force and a part of the contract between defendant and plaintiff, to wit: "In all cases where fire insurance policies have been transferred to the association as collateral security for loans, and the same are about to expire, the secretary shall notify the borrower; and should he or she neglect or refuse to renew the same, the secretary shall, without delay, cause a new policy to be issued and shall charge the same to the borrower with his or her next monthly dues, and for each neglect of duty as herein specified, the secretary shall be fined five dollars"; that in addition to said by-law, defendant had adopted the following rules and regulations upon the same subject: "Borrowers will please keep insurance in force and policy in hands of secretary, as provided in mortgages. Policy renewed and in agent's hands will not suffice, as secretary has no time to hunt up policies, but will hereafter, after giving notice of expiration, cause property to be insured in company of his selection and charge premium to borrower. Failure to pay insurance is cause for foreclosure;" that defendant required said policy should be deposited with it, and by its agent agreed with and promised plaintiff that at the expiration of the policy on August 19, 1911, defendant would renew and effect insurance on the dwelling

house on the mortgaged lot for $1,500; that defendant failed to renew the same or notify plaintiff of the expiration thereof, and on October 31, 1913, the house was wholly destroyed by fire without fault of plaintiff; that at the time of the loss of said house, plaintiff owed a balance to defendant on said note and mortgage of $1,186.78; that on account of defendant's failure to reinsure the property as it had promised and agreed to do, it had become indebted to plaintiff in the sum of $1,500, less the amount of $1,186.76 due on said note and mortgage as aforesaid, and the cost of procuring said insurance, which would have been $12, leaving a balance due of $301.22, for which amount suit was brought.  Three pleas were filed by defendant to the declaration,—the general issue, Statute of Frauds and *ultra vires*.

On the trial it was shown by the proofs that the stock was issued and the loan perfected, as stated in the declaration, by the assignment of stock and insurance policy and execution of said note and mortgage; that the by-laws contained the above provision and that the rules and regulations above set out were printed in the pass book issued to plaintiff; that the property was destroyed at the time stated and that its value was much more than $1,500; that plaintiff still owed defendant $1,186.78 after deducting the value of his stock; that defendant had not notified plaintiff of the expiration of the policy assigned to it, nor had it caused another policy to be issued; that the secretary of the association was ill at the time defendant gave the note and mortgage above referred to, and that the business was transacted on the part of defendant by one R. E. Renfro, who acted as secretary of defendant with its knowledge and consent.

Plaintiff testified that when the loan was made, Renfro promised to look after the insurance and not to let it expire; that Renfro said that he would take care of it.  Renfro testified that he did talk with

plaintiff about having this old policy cancelled and a new one written, but that he did not remember having the conversation detailed by plaintiff or that he said anything about renewing plaintiff's policy.

W. W. BARR and C. E. FEIRICH, for appellant.

JOHN M. HERBERT, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

### Abstract of the Decision.

1. BUILDING AND LOAN ASSOCIATIONS, § 12*—*when contract not ultra vires.* The plea of *ultra vires* is not available as a defense to an action in assumpsit for damages for breach of an agreement to procure fire insurance upon the expiration of a policy by a member of a building and loan association against the company, where the company has the authority to make loans and provide for the security of the same upon real estate, improved and unimproved, as the obtaining of insurance is but an incident to such powers.

2. FRAUDS, STATUTE OF, § 24*—*when not a defense.* The Statute of Frauds is not a valid defense to an action for damages by a member of a building and loan association against the association for failure to procure fire insurance upon the member's property which had been mortgaged to the association, because of the fact that the policy was not to be received for more than a year after a verbal agreement for reinsurance was made, where the rights of the member were not based solely upon such verbal agreement but upon by-laws, rules and regulations of the association, providing for a transfer of fire insurance policies as collateral security and making it the duty of the treasurer to notify the member before the policy would expire, and upon his failure to do so, to renew the policy and charge the premium to the borrower.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.