Chicago-Crawford Currency Exchange, Inc., et al.,
Plaintiffs-Appellees, v. Thillens, Inc., a Corpora-
tion, and Melvin Thillens, Defendants-Appellants.

Gen. No. 49,317.

First District, First Division.

April 6, 1964.

Rehearing denied May 25, 1964.

Tenney, Bentley, Guthrie & Howell, of Chicago
(John P. Forester and Stephen J. Nagy, of counsel),
for appellants.

Albert E. Jenner, Jr. and Thomas P. Sullivan, of
Chicago (Thompson, Raymond, Mayer & Jenner, of
counsel), for appellees.

MR. PRESIDING JUSTICE MURPHY delivered
the opinion of the court.

Plaintiffs, a group of currency exchange operators,
in a declaratory judgment action in chancery, charged
defendants with "unfair competition" and a conspiracy

to evade the licensing provisions of the Community Currency Exchanges Act (Ill Rev Stats 1961, c 16½, §§ 30–56.3). They sought injunctive and affirmative relief. Defendants, Thillens, Inc., and Melvin Thillens, doing business as Thillens Merchandising Company, appeal from a partial summary decree, which enjoins both defendants from engaging in an ambulatory currency exchange business "under the guise of a merchandising business, or under any other form, nature, means, subterfuge or guise" at locations specified in the decree. The decree was entered upon pleadings, affidavits, depositions and exhibits, and the chancellor expressly found that there was no just reason for delaying enforcement or appeal.

The title of the Community Currency Exchanges Act states that it is "an Act in relation to the definition, licensing and regulation of community currency exchanges and ambulatory currency exchanges, and the operators and employees thereof, and to make an appropriation therefor, and to provide penalties and remedies for the violation thereof." The Act was found to be constitutional in Thillens, Inc. v. Morey, 11 Ill2d 579, 144 NE2d 735 (1957).

Defendant Melvin Thillens contends the merchandising business which he conducted is not regulated by the Currency Exchanges Act since it is not a business for "cashing" checks, and that the Act in question should not be extended by implication beyond its literal terms. Defendant Thillens, Inc., contends the court erred in entering the summary judgment because a triable issue of material fact existed as to whether the corporation engaged in the enjoined business.

In substance, the record shows that in 1959, defendant Thillens, Inc., an ambulatory currency exchange business, applied for licenses to operate at 41 additional locations. The Director of Financial Institutions determined that the issuance of these licenses would

not "promote the convenience and advantage of the community" and denied the applications. The orders of denial were sustained in Thillens, Inc. v. Department of Financial Institutions, 24 Ill2d 110, 180 NE2d 494 (1962).

In July, 1961, and while the appeal of Thillens, Inc., was pending before the Supreme Court, Thillens Merchandising Company, a sole proprietorship owned by defendant Melvin Thillens, was formed for the purpose of "selling tangible personal property at retail." Thillens obtained a peddler's license from the City of Chicago and began to sell numerous items of small value, such as tie clasps, cuff links, sun glasses, money clips, greeting cards, perfume containers and the like. The items were sold for 24¢ plus 1¢ sales tax. During the same period, Thillens, Inc., was cashing checks in excess of $50 for a fee of 25¢. From 75% to 90% of the sales were paid for by check. The sales were made at about seventy-five locations, on the premises of various industrial firms, and "an attempt was made to coordinate the date of these stops with the payday of the plant in question."

The record establishes the following relationship between the two defendants. Thillens, Inc., sold trucks, guns, money changers, money boxes and adding machines to the merchandising company. The trucks, equipped with tear gas, shotguns and armed guards, were similar in color and in all other respects to the Thillens, Inc., trucks, except that the Thillens, Inc., emblem, "Thillens Checashers," was removed. Garage service, maintenance and storage were furnished at 40¢ per mile, in the same garage as the trucks of Thillens, Inc., and protected by the same watch service. Thillens, Inc., loaned to the merchandising company all of the money used by it in its operations, at the rate of 20¢ per $1,000 per day. During the week of May 14–19, 1962, Thillens sold 2,953 items of mer-

chandise for a total of $738.25, and received checks totaling $228,341.63 in payment of merchandise. During that week, Thillens borrowed approximately $255,-000 from Thillens, Inc. The merchandising business maintained a separate bank account. The books of account were kept by the Thillens, Inc., bookkeeper, in offices also occupied by Thillens, Inc., and a third proprietorship known as North Town Currency Exchange. About 3% of the bookkeeper's time was spent on the books of the merchandising company and Thillens, Inc., was reimbursed for this service as well as for the use of office space.

The employees of the merchandising company wore similar uniforms to the employees of Thillens, Inc., except there was no lettering on the uniforms. They carried the same kinds of weapons and used the same kinds of money boxes and money changers. The head driver of each truck of both companies went to the same garage each morning and obtained a large amount of cash, and used the same procedure in handling currency. At the end of each day, the employees of both returned their trucks to the same garage and prepared reports on the same kind of forms, showing cash on hand at the start of the day, total amounts of checks received, and cash on hand at the end of the day, and other information.

■ ■ Initially, defendant Melvin Thillens argues that he, as a merchandising company, is not within the ambit of the Currency Exchanges Act. The statutory definition of currency exchange, as provided in chapter 16½, § 31, is a company "engaged in the business or service of, and providing facilities for, cashing checks, drafts, money orders or any other evidences of money acceptable to such community currency exchange, for a fee or service charge or other consideration." Defendant specifically relies upon the following provision of section 31:

369

"Nothing in this Act shall be held to apply to any person . . . engaged in the business of selling tangible personal property at retail who, in the course of such business and only as an incident thereto, cashes checks, drafts, money orders or other evidences of money."

Defendant Thillens maintains he is not in the business of "cashing" checks and that, technically, a check can be cashed only when it is converted entirely into cash and not when used as payment for merchandise. He further argues that "the statutory definition of 'currency exchange' is objective . . . and the reason for or the method of operation of the business, or the intent to solicit and accept employees' pay checks in payment for merchandise sold, is completely immaterial to the determination of whether or not the business is or is not a currency exchange as defined."

We find no merit in the foregoing contention. We believe the legislature, by section 31, intended to protect the bona fide retail business "selling tangible personal property" and cashing checks incidentally, and not the subterfuge of operating "ambulatory currency exchanges under the form and guise of a retail merchandising business." This finding of the chancellor is amply supported by the record, as is the conclusion that the conduct complained of "is a conspiracy between defendants to evade and is in fact an evasion by subterfuge of the licensing provisions of the Illinois Currency Exchange Act."

Defendants, citing legislative history and the executive reaction to the Act, contend that the Currency Exchanges Act is "more motivated by a purpose to restrain competition than by a need for regulation in the public interest, and this court should not lend itself further to that purpose by indulging in a broad construction of the act, adding by implication or in-

tendment what the legislature did not by the words of the statute include." While the court is aware of the conflicting interests involved in legislation of this kind, the issue has been resolved in Thillens, Inc. v. Morey, 11 Ill2d 579, 144 NE2d 735 where our Supreme Court, in upholding the validity of the Act, said (p 592):

"From the facts before the court it seems amply clear that the legislature was not unreasonable, arbitrary or capricious in determining that the nature of the plaintiff's business was such as to render it hazardous and dangerous to the public safety and security, warranting police regulations."

Similarly, defendants urge strict construction of the statute because it is in derogation of a common right to compete, and that it is penal in nature. Cited is Cedar Park Cemetery Ass'n, Inc. v. Cooper, 408 Ill 79, 96 NE2d 482 (1951), where the court said (p 83):

"When a statute is penal in its nature, it cannot be extended by intendment or implication to embrace matters beyond its terms. . . . Where a statute has remedial features and is at the same time in derogation of the common law, it will be strictly construed when determining what persons come within the statute."

However correct this statement may be, it is equally true that penal laws are not to be construed so strictly as to defeat the obvious intention of the legislature. (People v. Kirkrand, 397 Ill 588, 590, 74 NE2d 813 (1947).) We believe that the general rules of statutory construction should be applied here. "A statute or ordinance must be construed according to its intent and meaning, and a situation that is within the object, spirit and meaning of the statute is regarded as within

371

the statute, although not within the letter; and a situation that is within the letter is not regarded as within the statute unless also within its object, spirit and reasoning. People ex rel. Barrett v. Thillens, Inc., 400 Ill 224, 79 NE2d 609." Lincoln Nat. Life Ins. Co. v. McCarthy, 10 Ill2d 489, 494, 140 NE2d 687 (1957).

We conclude, in applying the above cited test, that the chancellor did not err in finding the defendants in violation of the Act. The conduct of Thillens Merchandising Company was an evasion by subterfuge of the licensing provisions of the Act and it is, in effect, an ambulatory currency exchange. Regulatory statutes apply to the regulated activity regardless of the form or guise it takes, and the court cannot allow the defendants here to do, by indirection, what is forbidden by the statute. Limpp v. Dodge, 146 Kan 948, 73 P2d 1001 (1937); Harrell v. State, 359 P2d 610 (Okla 1961).

Finally, defendant Thillens, Inc., contends: that the summary decree was wholly unwarranted against the corporation because a triable issue of material fact existed; that the summary decree cannot be justified by a disregard of the corporate entity in equity on a theory of identity of stockholder and corporation; and that the court committed error in entering a summary decree against the corporation based upon the acts of its stockholder.

We find no merit in these contentions. There were no facts in dispute as to the activities of Thillens, Inc., and the question was one of law whether the accepted facts in this case constituted a violation of the Act by either or both of the defendants. The affidavits of the president and vice president of Thillens, Inc., confirm the chancellor's finding that no genuine issue as to material fact existed. We believe all relevant facts have been presented.

Defendant Thillens, Inc., also argues that it is an entity separate from its shareholders, and the identity of the "shareholder and corporation does not stand as an undisputed fact." The record shows that defendant Melvin Thillens is the sole stockholder and chief executive officer of defendant Thillens, Inc. It has been frequently held that the owner of all of the stock of a corporation will be treated as its alter ego, and these cases have refuted the fiction of separate legal entities in cases where used as a protection to fraud or other illegal transactions. (Donovan v. Purtell, 216 Ill 629, 75 NE 334 (1905).) In Illinois Interior Finish Co. v. Poenie, 277 Ill App 554, 566 (1934), the court said:

> "In such cases as this the courts will not permit themselves to be blinded nor deceived by mere forms of law, but, regardless of the fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require."

As the chancellor found the conduct of the defendants to be a conspiracy between them to evade the statute, there was both factual and legal reason for the summary judgment against the defendant corporation and the individual defendant. We think the corporate participation was a major factor in the subterfuge used here to do, by indirection, what the Currency Exchanges Act plainly forbids.

For the reasons stated, the instant decree is affirmed.

Affirmed.

BURMAN and KLUCZYNSKI, JJ., concur.