Walter F. Kerrigan, Plaintiff-Appellant, *v.* Unity Savings Association *et al.*, Defendants-Appellees.

(No. 55637;

First District (2nd Division)—May 1, 1973.

Frank J. Mackey, Jr., and Sidney Z. Karasik, both of Chicago, for appellant.

Morris I. Leibman and David P. List, both of Sidley & Austin, of Chicago, for appellees.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This appeal is from the judgment entered in a derivative suit by the plaintiff Walter F. Kerrigan, a reserve shareholder, on behalf of Unity Savings Association and its members. The complaint prayed for an accounting and equitable relief against Plaza Insurance Agency, Inc., an Illinois corporation, Saul Z. Bass, Mitchell H. Bass, Howard I. Bass, Louis L. Spear and Myron I. Voss. It alleged that Unity was a permanent reserve savings and loan association engaged in savings and loan activities; that in 1962, the individual defendant, officers and directors of Unity, organized Plaza as an insurance agency and that Unity refers its borrowers to Plaza for fire, homeowners and other forms of insurance coverage, enabling defendants, or some of them, to appropriate a business opportunity that belongs to Unity.

Defendants appeared, answered the complaint, denied its material allegations and alleged that since the statutes of Illinois prohibit a savings and loan association such as Unity from engaging directly or indirectly in the insurance brokerage business, they did not appropriate a business opportunity that belonged to Unity. Thereafter, supported by his affidavit, plaintiff filed a motion for summary judgment limited to his claim that defendants had "* * * unlawfully diverted to themselves insurance profits that rightfully should go to the Unity Savings Association and its members." A short time later, defendants filed a similar motion, supported by the affidavit of Howard I. Bass, in which they alleged that there was no genuine issue as to any material fact and that they were "entitled to judgment as a matter of law because the Illinois Revised Statutes, chapter 32, sections 701 through 744, (Illinois Savings and Loan Act) and chapter 73, section 1065.40 [of the Insurance Code]

specifically prohibit defendants from engaging in those practices which plaintiff alleges in his Complaint * * *." After hearing the parties, including consideration of their memoranda of law, the trial court, without stating the grounds, granted defendants' motion and dismissed the suit. From this ruling, plaintiff presents two issues. (I.) Whether an Illinois chartered savings and loan association has statutory authority to engage, directly or indirectly, in the business of selling fire and casualty insurance. (II.) Whether defendants, officers and directors of Unity Savings Association, in violation of their fiduciary duties, appropriated a business opportunity that belonged to Unity.

## I.

In this State, the authority of savings and loan associations is found in the Illinois Savings and Loan Act, a law adopted in 1955, but one with statutory antecedents that go back to 1872. (See S.H.A., ch. 32, sec. 701 et seq., Historical Notes.) The statute has always provided that a savings association "* * * shall have any power conferred on a corporation by the Business Corporation Act, and any power not prohibited by law, which is reasonably incident to the accomplishment of the express powers conferred upon the association by this Act." (Ill. Rev. Stat. 1967, ch. 32, par. 708.) The Illinois Insurance Code provides that a business corporation can qualify to be an insurance agent. (See Ill. Rev. Stat. 1967, ch. 73, par. 1065.37.) A careful reading of both statutes (Ill. Rev. Stat. 1967, ch. 32, pars. 701 to 944 and Ill. Rev. Stat. 1967, ch. 73, pars. 1065.36 to 1065.59), fails to disclose any provision specifically prohibiting a savings and loan association from engaging in the business of selling fire and casualty insurance. In this record, it does not appear that either the Commissioner of Savings and Loan Associations or the Director of Insurance has ever determined that an Illinois savings and loan association cannot sell casualty insurance. Neither our research nor that of counsel for the parties had produced an administrative or court ruling that a state chartered savings association like Unity lacked statutory authority to engage, directly or indirectly, in the business of selling fire and casualty insurance. On the contrary, there are judicial decisions that suggest otherwise. And in determining the pertinency of these decisions, it is well to bear in mind that one of the express powers of an Illinois savings and loan association is its authority to loan money on the security of real estate. See Ill. Rev. Stat. 1967, ch. 32, par. 791(b).

In *Chicago Building Society v. Crowell*, 65 Ill. 453, a loan association agreed to procure fire insurance for a borrower and see to it that the policy was renewed. The association failed to perform its agreement. The building on the mortgaged property was destroyed by fire. In a suit by

the borrower, judgment was entered against the lender. On appeal, the Supreme Court held that since the association was authorized to make loans and provide for their security, it could agree to procure insurance because procuring insurance was incident to the making of loans by the association. 65 Ill. 453 at 457.

In *Biggs v. Carbondale Building L. & H. Ass'n.*, 194 Ill.App. 171 (Abstr.), a judgment was entered against a loan and homestead association for breach of an agreement to procure insurance on a borrower's property. One of the loan association's special pleas was *ultra vires,* the contention being that the association lacked the authority to procure insurance for a borrower. The court held that the authority to procure fire insurance was incident to the authority to make loans on real estate and provide for their security.

In *Goodman v. Perpetual Building Association* (Dist. Ct. D.C. 1970), 320 F.Supp. 20, the case contained the issues presented to us in this appeal. There the plaintiffs, as did plaintiff here, brought a derivative suit against the association directors and an insurance broker for injunctive and other relief alleging breach of fiduciary duty on the part of the directors with respect to insurance transactions on property securing the association's loans. The defendants, as do defendants here, contended that the association could not engage in the business of selling insurance; therefore, organization by them of a partnership insurance agency was not an appropriation of the corporate opportunity in the insurance business that was generated by the association through its loans. The court entered judgment for the plaintiffs, holding that the association could engage in the business of selling casualty insurance in the District of Columbia and to that extent defendants had to account for appropriation of business which belong to the association in which they were officers and directors.

Despite the absence of any statutory provision, administrative ruling or court decision to support them, defendants who were officers and directors of Unity and controlled its business affairs, concluded in 1962 that Illinois law prohibited the association from engaging in the sale of fire and casualty insurance. Accordingly, they organized and became the owners of Plaza, an agency corporation to which was referred the insurance business generated by Unity's loan business. The record before us does not disclose how defendants reached the conclusion that Unity could not engage in the insurance brokerage business. It does not appear, for example, that before they organized Plaza defendants, on behalf of Unity, applied for an insurance agent's license or sought to create an insurance agency corporation for it. Defendants do not claim they sought independent legal advice or obtained the views of disinterested persons

concerning Unity's qualifications to engage directly or indirectly in the insurance brokerage business. There is no showing that either the Commissioner of Savings and Loan Associations (Ill. Rev. Stat. 1967, ch. 32, pars. 841, 841.2), or the Director of Insurance (Ill. Rev. Stat. 1967, ch. 73, par. 1013), was asked to give an opinion or make a ruling on the subject.[1]

■■ From these facts, plaintiff contends that when defendants organized Plaza as an insurance agency for their benefit, they could have organized a corporation for the benefit of Unity and its members. Plaintiff argues that Unity, through such a corporation, could have sold the fire and casualty insurance needed by its borrowers and generated by its loans. To support this contention, plaintiff relies on the fact that the Illinois Savings and Loan Act, from its enactment in 1955, gave savings associations like Unity, the power "[t]o become a member of the Federal Home Loan Bank, and to have all power of such a member which are not inconsistent with the provisions of this Act; and to have all powers granted to Federal Savings and Loan Associations except as limited or prohibited by this Act subject to regulation of the Commissioner wherever applicable." (Ill. Rev. Stat. 1967, ch. 32, par. 706(c).) In 1964, Congress amended the Home Owners Loan Act of 1933 to provide that federally organized savings and loan associations could invest in service corporations. (12 U.S.C.A. sec. 1464(c).) On November 8, 1967, in a policy statement concerning administration of the federal savings and loan system, the Federal Home Loan Bank Board declared that "[i]n addition to those activities which a Federal association is authorized to perform, the Board will consider for approval applications in which the service corporation, or a subsidiary, has authority to act as an insurance agent * * *." (See 32 Fed. Reg. 15747 (1967); 12 C.F.R. sec. 556.3(c).) In apparent conformance with this federal regulation, the Illinois legislature amended the savings and loan act to provide that Illinois savings associations shall have the general power "[t]o purchase stock in a Service Corporation in an amount not to exceed 2% of the association's assets * * *." (Ill. Rev. Stat. 1967, ch. 32, par. 706(i).) A service corporation is a subsidiary, another corporation invested in or formed by a savings and loan association to render a needed service. (See 12 C.F.R. sec. 545.9—1(b).) Under the terms of the Illinois Insurance Code, a service corporation can be an insurance agency because "[t]he term

---

[1] The only authority cited by defendants in support of their position is a 1955 opinion which the Illinois Attorney General gave to the Auditor of Public Accounts. See 1955 Ops. Att'y. Gen. 97 (No. 210, 1955). We have examined this opinion and find neither its reasoning nor conclusions persuasive. Compare *Rogers Park Post No. 108 v. Brenza*, 8 Ill.2d 286, 134 N.E.2d 292; *Alsen v. Stoner*, 114 Ill.App.2d 216, 252 N.E.2d 488.

'agent' means any person, partnership, association or corporation * * *."
(Ill. Rev. Stat. 1967, ch. 73, par. 1065.37.) From these sources of state and federal law, plaintiff contended in the trial court and does before us, that through a subsidiary or a service corporation, an Illinois savings and loan association like Unity has always had the statutory authority to engage in the business of selling fire and casualty insurance.

Defendants meet these contentions with the argument that even if the Illinois savings and loan act gave associations like Unity the statutory authority to sell casualty insurance, there are two provisions of the Illinois Insurance Code which Unity could not meet. First, the Code requires that to qualify for a license, an association or corporation must be "actively engaged" in the insurance business.

> The term "actively engaged" shall be taken to mean * * * that the applicant intends to write or place during the license year * * * a total volume of premiums on insurance for others, at least twice that of the combined total volume of premiums of insurance upon his or its own property or risks, or upon the property or risks of his or its employer, or the property or risks of members, officers and directors if applicant is a partnership, association or corporation. Ill. Rev. Stat. 1967, ch. 73, par. 1065.55.

Defendants argue that the insurance Unity would sell through a subsidiary or service corporation would be on its own risks or those of its members. This being so, defendants insist, the subsidiary or service corporation would have to generate from "others" twice as much insurance as that produced by Unity loan activities, an impossible task. Second, the Code provides that money, commission, brokerage or allowance of anything of value for solicitation, negotiation or effecting of policies or contracts for insurance on property or risks in this state, may be paid by an insurance company only to its licensed agent or broker, by an agent only to its licensed solicitor of licensed agent for the same company; or by a broker only to his licensed solicitor or to a licensed broker. (Ill. Rev. Stat. 1967, ch. 73, par. 1065.40.) Receipts of money or things of value in violation of this statute are rebates. Therefore, defendants argue that if through a subsidiary or service corporation Unity were to receive any commission or profit from the solicitation, negotiation or effecting of policies of fire or casualty insurance in Illinois, it would be receiving illegal rebates. In our judgment, these arguments lack merit.

■■■ A savings and loan association is a corporation. It is an entity separate and distinct from its members and generally, from any subsidiary corporation in which it may have an interest. (*Dregne v. Five Cent Cab Co.*, 381 Ill. 594, 46 N.E.2d 386; compare *Divco-Wayne Sales Financial Corp. v. Martin Vehicle Sales, Inc.*, 45 Ill.App.2d 192, 195

N.E.2d 287.) Moreover, when a Unity mortgage transaction is closed and a fire or casualty insurance policy is issued to cover the mortgaged real estate, the risk insured is not that of Unity, the mortgagee; it is that of the owner, the mortgagor. At the time of closing, when the insurance commission is earned, Illinois law of mortgages gives the mortgagee only a lien on the land to secure payment of the debt. (*Central Republic Trust Co. v. Peterson Furniture Co.*, 279 Ill.App. 492, I.L.P. Mortgages, sec. 112.) Therefore, all the insurance which a savings association like Unity sells either through a subsidiary or service corporation would be with "others" as that concept is used in the Illinois Insurance Code.

■■ A rebate, within the condemnation of statutes forbidding such practices in connection with insurance premiums, is a reduction from a stipulated premium allowed pursuant to an antecedent contract. (*Tucson Federal Sav. & Loan Ass'n. v. Aetna Insurance Corp.* (1952), 74 Ariz. 163, 245 P.2d 423, 427; 44 C.J.S. Insurance sec. 342b.) If Unity had a subsidiary or service corporation through which it sold casualty insurance, it would not be engaged in an antecedent contract for the reduction of stipulated premiums. Hence, the commissions and profits would not be rebates. (See *Goodman v. Perpetual Building Association* (Dist. Ct. D.C. 1970), 320 F. Supp. 20; compare *Goodpaster v. Southern Insurance Agency* (1943), 293 Ky. 420, 169 S.W.2d 1.) For these reasons, either a subsidiary or a service corporation, invested in or organized by Unity as an insurance agency, could meet all the requirements of the Illinois Insurance Code. Accordingly, we hold that in 1962 when defendants organized Plaza, an Illinois savings association like Unity, through a subsidiary corporation, and additionally after 1967 through a service corporation, had statutory authority to engage in the business of selling fire and casualty insurance. Whether in fact Unity could engage in this business is a question that could not be decided in a summary proceeding. Therefore, the trial court erred in granting defendants' motion for summary judgment.

## II.

■■ The opportunity to sell fire and casualty insurance was created by Unity's savings and loan business. Under the terms of its loans, borrowers were required to insure their mortgaged real estate against fire and other casualty. The insurer had to be a responsible one, acceptable to Unity. Therefore, the business opportunity in the sale of this insurance belonged to Unity. As against the individual defendants, its directors and officers, this business interest was protected by the doctrine of corporate opportunity.

■■ The doctrine of corporate opportunity is not new to our law. It

is only one phase of the cardinal rule that requires undivided loyalty from corporate fiduciaries. In other words, one who is a fiduciary to a corporation may not acquire, in opposition to it, any property or tangible expectancy in which it has an interest or which is essential to its existence. (3 Fletcher Cyclopedia of Corporations, sec. 861.1 (perm. ed. 1965); *Paulman v. Kritzer,* 74 Ill.App.2d 284, 219 N.E.2d 541.)

■■ Directors and officers of a corporation are fiduciaries. They are the trustees of its business and property. In this capacity, they are subject to the general rule of trusts and trustees that they cannot, in their dealings with the business or property of the corporation, use their relation to it for their own personal gain. (*Dixmoor Golf Club v. Evans,* 325 Ill. 612, 615-116, 156 N.E. 785; *Winger v. Chicago Bank & Trust Co.,* 394 Ill. 94, 67 N.E.2d 265; *Johnson v. Central Standard Life Ins. Co.,* 102 Ill.App.2d 15, 243 N.E.2d 376.) Plaintiff contends that since 1962 when they organized Plaza, the individual defendants, in breach of their fiduciary duties, and in violation of the corporate opportunity doctrine, have wrongfully appropriated Unity's business opportunity in the sale of fire and casualty insurance.

■■ Whether the directors or officers of a corporation have appropriated something for themselves, which, in all fairness, belongs to their corporation, is always a question of fact to be decided from all the circumstances. (*Equity Corporation v. Milton* (Del. 1966), 43 D.Ch. 160, 221 A.2d 494.) Consistent with this principle, it has been held that whether a business opportunity is a corporate one, or one within the legitimate interests of officers or directors, depends on the facts. (*Alvest, Inc. v. Superior Oil Corporation,* (Alas. 1965), 398 P.2d 213; *Diedrick v. Helm* (1944), 217 Minn. 483, 14 N.W.2d 913; *Guth v. Loft, Inc.* (1939), 23 Del. Ch. 255, 5 A.2d 503.) In this case, the affidavits in support of the motions for summary judgment raised an issue of fact whether defendants, in violation of their fiduciary duties, had breached the doctrine of corporate opportunity by appropriating a business that belonged to Unity. This issue could be resolved only in a trial of this cause on its merits.

For these reasons, the judgment is reversed and the cause is remanded with directions that defendants' motion be denied; and that the derivative suit be redocketed in the trial court for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded with directions.

STAMOS, P. J., and SCHWARTZ, J., concur.