THE PEOPLE *ex rel.* ROGERS W. TROXELL *et al.*, Plaintiffs-Appellants, *v.* JAMES BAYLOR, Director of the Department of Insurance, Defendant-Appellee—(TALMAN SERVICES CORPORATION *et al.*, Intervenors-Appellees.)

(No. 11931;

Fourth District—October 17, 1973.

Kenneth H. Otten, of Nafziger & Otten, and Robert J. Myers, both of Springfield, for appellants.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel and Robert J. O'Rourke, Assistant Attorneys General, of counsel), for defendant-appellee.

Jack H. Oppenheim, Herman Smith, and J. Herzl Segal, of Arvey, Hodes & Mantynband, of Chicago (Jerome P. Croke and Leon J. Drolet, of counsel), for intervenors-appellees.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

This appeal is taken from a declaratory judgment that the director of the Department of Insurance of the State of Illinois is authorized by law to issue insurance brokerage and agency licenses to service corporations owned by savings and loan associations.

The plaintiffs, two individual insurance brokers and agents and the Independent Insurance Agents of Illinois, originally brought an action for *quo warranto* and for a declaratory judgment against the Director of Insurance challenging the issuance of brokerage or agency licenses to service corporations owned by or controlled by savings and loan associations.

The intervenors, Talman Services Corporation, an Illinois corporation which is a wholly owned subsidiary of Talman Federal Savings & Loan Association of Chicago, and The Arlington Agency, Inc., an Illinois corporation which is a wholly owned subsidiary of another Illinois corporation, Arlington Heights Corporation, which in turn is a wholly owned subsidiary of Arlington Heights Federal Savings & Loan Association, claimed a substantial interest in the outcome by having acquired or applied for insurance brokerage licenses from the director. After the trial court allowed the service corporations' petition to intervene and they were joined as defendants, the Attorney General accepted their briefs and they became the active defendants.

The parties entered a stipulation of the facts and no testimony was taken. The case was argued on the interpretation and interaction of the federal law on savings and loan associations (Home Owners' Loan Act

of 1933, McCarran-Ferguson Insurance Regulation Act), and the Illinois Savings and Loan Act with the Illinois Insurance Act.

Both parent savings and loan associations are federally chartered, having their home offices in Illinois. Both defendant service organizations are Illinois corporations and are wholly owned subsidiaries. The trial court held that the Director of Insurance is authorized to issue insurance brokerage and agency licenses to qualified Illinois service corporations such as Talman and Arlington, which are subsidiaries of: (1) federally chartered savings and loan associations having their home offices in Illinois, or (2) of Illinois savings and loan associations, or (3) subsidiaries of federal or state savings and loan associations.

Although the trial court's letter opinion stated: "The court should comment that it sees no difference as a practical matter between the savings and loan associations and the service corporations. We could not allow the creation of a separate entity to do something which it could not do itself", the narrow holding of the court was that the Director of Insurance was authorized to issue insurance brokerage and agency licenses to qualified service corporations, and, therefore, before reaching the insurance code, the status of the defendant corporations must be considered.

A 1964 amendment to the Home Owners' Loan Act of 1933, authorized a federally chartered savings and loan association to invest up to 1% of its assets in the capital stock of a wholly owned subsidiary corporation organized under the laws of the state in which the home office of the association was located. (12 U.S.C.A. sec. 1464(c).) The corresponding federal regulations provide that one of the approved functions of such service corporations is "serving as insurance broker or agent, primarily dealing in policies for savings and loan associations, their borrowers and account holders, * * *." (12 C.F.R. 545.9—1(a)(4)(xi).) The Illinois Savings and Loan Act (Ill. Rev. Stat. 1971, ch. 32, par. 706) provides among the powers for savings and loan associations chartered in Illinois "(i) To purchase stock in Service Corporations in an amount not to exceed 2% of the association's assets and to invest in any form of indebtedness of any Service Organizations as defined in this Act, subject to regulations of the Commissioner." The definition portion of the Act (Ill. Rev. Stat. 1971, ch. 32, par. 710), says that "a service corporation" is "any corporation which is 90% or more owned by one or more associations and whose purpose or purposes are reasonably incident to the accomplishment of the express powers conferred upon associations by this Act." In 1963, the Illinois Savings and Loan Act of 1955 was amended to provide that Illinois savings and loan associations have all the powers granted to federal savings and loan associations (Ill. Rev. Stat. 1971,

ch. 32, par. 706(c)). In 1967, Illinois added sub-section (i) to the above paragraph to allow Illinois savings and loan associations to invest in service corporations. Then in 1969, the Illinois Savings and Loan Act was amended to specifically authorize an Illinois association to make any investment which it could make if it were incorporated as a national savings and loan association under the laws of the United States (Ill. Rev. Stat. 1971, ch. 32, par. 792.13.) Again in 1971, the above-mentioned policy was made even clearer by stating that an Illinois association "Notwithstanding anything to the contrary contained in this Act", shall "have all of the powers granted to a savings or thrift institution organized under the laws of the United States and which is located and doing business in the State of Illinois * * *." Ill. Rev. Stat. 1971, ch. 32, par. 706(c).

However, the McCarran-Ferguson Insurance Regulation Act (15 U.S.C.A., sec. 1012) still provides for regulation of insurance by state law: "(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: * * *". Plaintiffs do not dispute that both Talman Services and Arlington Agency are legitimate service corporations under federal and state laws and regulations, but contend that neither that status nor the Illinois policy, as expressed in the Savings and Loan Act of giving federal and state chartered savings and loan associations equal powers and privileges, is controlling. Rather, plaintiffs contend Illinois insurance law precludes issuing a license to defendants.

It is stipulated that approximately sixty per cent of the total volume of insurance placed by Talman Services is on property of borrowers of Talman Federal Savings & Loan, and that about eighty-three per cent of the total volume to be placed by Arlington Agency is on property of borrowers of Arlington Federal. Plaintiffs depend on three provisions in the Illinois Insurance Code as forbidding the selling of insurance by savings and loan associations or their subsidiaries. Main reliance is placed upon section 508 which requires one to be "actively engaged" in the insurance business to obtain a license. That status is defined to mean that the total volume of premiums on insurance for others must be at least twice that of the combined total volume of premiums on the license holder's own property risks, or upon "the property or risks of members, officers and directors if applicant is a partnership, association or corporation." This means that more than two-thirds of the total premiums for insurance must be on risks of others. (Ill. Rev. Stat. 1971, ch. 73, par. 1065.55.) Plaintiffs also rely on section 151 of the Insurance

Code saying that no company doing business in the state and no insurance agent or broker shall give either direct or indirect rebates. (Ill. Rev. Stat. 1971, ch. 73, par. 763.) On substantially similar grounds, plaintiffs rely on section 493 providing that commissions on insurance are only payable to duly licensed agents or to a duly licensed broker. Ill. Rev. Stat. 1971, ch. 73, par. 1065.40.

The underlying thesis of plaintiffs' contention that the foregoing provisions of the Illinois Insurance Code preclude a license or brokerage permit being granted to a savings and loan association or its subsidiary service corporation is the provision in the Illinois Savings and Loan Act (Ill. Rev. Stat. 1971, ch. 32, par. 741(a)): "The membership of an association consists of: * * * (2) Every borrower from the association, as long as his loan remains unpaid and he remains liable to the association for the payment thereof; * * *." Likewise, federal statute 12 U.S.C. sec. 1464(b)(1) provides: "Holders of savings accounts and obligors of an association shall, to such an extent as may be provided by its charter or by regulations of the board, be members of the association, and shall have such voting rights and such other rights as are thereby provided. * * *." In simplest terms, plaintiffs argue that defendants cannot be allowed to sell insurance because the savings and loan association itself could not do so, and the savings and loan association could not do so because the Illinois insurance statute's requirements: that the seller of insurance be "engaged in the insurance business" which means selling two-thirds of the insurance to "others"; that no commissions be paid to other than licensed brokers; and that no rebates be given.

In order to reach this result, plaintiffs stress the Insurance Code's reference to insuring "its own property or risks" which is defined as including *members*, officers, and directors of applicants, if a partnership, association or corporation, and then refer to the Illinois Savings and Loan Act which says every borrower and every depositor in a savings and loan association is a member. Plaintiffs then argue that defendant service organizations are alter egos, being wholly owned by the parent savings and loan association, and therefore they are selling insurance primarily to themselves because the bulk of the insurance covers homes financed by the parent savings and loan associations taken out by borrowers who are members by virtue of the loan, and not to "others". By the same reasoning it is argued that commissions would be enjoyed by members of the association by means of increased profits made on insurance premiums, which presumably would go from the subsidiary service corporation to the savings and loan association, and then be passed on in some form to the members. Likewise, rebates are foreseen by the plaintiffs by the premium on insurance giving either lower insurance

rates to the borrower-members or lower interest charged, or in some other manner bestowing favorable financial results.

■■ That position requires piercing the corporate veil of the subsidiary service corporation which is questionable here, where, although as the trial judge found, it is clear that the wholly owned subsidiary with the same directors and operating out of the same building will work closely with the parent savings and loan association, still the service corporations are required to be wholly owned. Piercing the corporate veil is generally resorted to only when something unlawful, or at least against public policy, is being done by means of an alter ego. (*Superior Coal Co. v. Department of Finance*, 377 Ill. 282, 294, 36 N.E.2d 354.) In the case at bar, nothing is being done secretly or by deceit, and the defendants are legitimate corporations under both the Savings and Loan Act and the Illinois Business Corporation Act.

The first district has recently held in *Kerrigan v. Unity Savings Association*, 11 Ill.App.3d 766, 297 N.E.2d 699, that a savings and loan association through a subsidiary corporation and after 1967 through a service corporation, has stautory authority to engage in the business of selling fire and casualty insurance. The court reasoned that a savings and loan association and its members are separate and distinct from a subsidiary corporation. It concluded that the insurance sold would be to "others" in that the borrowers were separate from the insurance subsidiary, and further concluded that the subsidiary would meet the "actively engaged" test because it would, therefore, be selling to others. That opinion held that no rebate would be involved since that term, as used in the Insurance Code, means a reduction from a stipulated premium allowed pursuant to an antecedent contract.

■■ Here we need not decide whether the savings and loan association itself could acquire a license to engage in insurance selling, although as the trial court's letter opinion stated there is little difference in the real effect. The defendant is correct in asserting that piercing its corporate veil is not justified. Here the formation of the service corporation is clearly authorized by both state and federal law. As to the Insurance Code, nothing specifically forbids a savings and loan association from having a license to sell insurance. As to the requirements under the Insurance Act, first of all, the sale of insurance to borrowers covering a home mortgaged by the savings and loan association is not a sale to self. The home is owned and the risk is borne by the borrower. Although designated members of the lending Savings and Loan Association by the Savings and Loan Act, the borrower mortgagors are not "members" of the license holding entity as that term is used in the Insurance Code requiring that the bulk of insurance be sold to "others". Members of the

savings and loan association do not directly receive any commission nor does the savings and loan association itself. The service corporation is a legitimate corporate entity. The same reasoning applies to rebates, there being no evidence that people who finance their homes through the parent savings and loan association receive preferential rates over other buyers, or that the savings and loan association was directly given any kickbacks on sales of insurance.

The judgment is affirmed.

Affirmed.

SMITH, P. J., and TRAPP, J., concur.