BANKERS TRUST COMPANY *et al.*, Plaintiffs-Appellants, *v.* CHICAGO
TITLE & TRUST COMPANY *et al.*, Defendants.—(LEONARD
HARTENFELD, Intervenor-Appellee.)

First District (2nd Division)    Nos. 79-1816, 80-700 cons.

Opinion filed October 28, 1980.

Douglas F. Fuson and Kathryn E. Korn, both of Sidley & Austin, of Chicago, for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Dennis J. Horan, George W. Spellmire, and Leonard Hartenfeld, of counsel), for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Leonard Hartenfeld (hereinafter "Hartenfeld " or " intervenor"), over objection, was permitted to intervene in a mortgage foreclosure proceeding alleging that he was entitled to an equitable lien on the subject land or its proceeds in payment of attorney's fees incurred by his client, Lee Romano. In a bench trial, the court recognized the asserted equitable lien in the amount of $150,000 and entered judgment thereon against Bankers Trust Company, the mortgagee, and also the purchaser at the foreclosure sale, and its subsidiary, Reo Resources, Inc., to which the land was transferred after the purchase (hereinafter collectively "Bankers"). Bankers assigns error in the allowance of intervention by Hartenfeld and in the imposition of the equitable lien. For the reasons set forth below, we reverse.

Schaumburg Planet Project Corporation (hereinafter "Planet") was the beneficial owner of 66 acres of unimproved land located in Schaumburg, Illinois, held in trust, and Chicago Title and Trust Company (hereinafter "CT&T") as trustee was the legal owner. In October of 1973, Planet borrowed $7,622,956.71 from Bankers, securing the loan by a first mortgage on that land. The loan was also personally guaranteed by Romano, the president and sole shareholder of Planet, and by his wife, Barbara, who owned no interest in Planet. In October of 1975, Planet

defaulted on the loan, and Bankers instituted. foreclosure proceedings against CT&T and unknown owners. Romano was neither a named defendant nor made a party to this action.

On December 4, 1976, Hartenfeld filed his petition to intervene asserting a $150,000 equitable lien on the land for the following reasons. On February 12, 1973, Hartenfeld and Romano entered into a written agreement drafted by Hartenfeld, attached to the petition, whereby Hartenfeld was to receive $200,000 for performing legal services for Romano. The contract provided, *inter alia*, that "whenever during 1973, you [Romano] successfully accomplish a new land loan on any of your parcels of real estate, I will be paid immediately all fees then owed me under this letter agreement. In any event, however, all fees owed to me under this letter agreement shall be paid to me by no later then the end of 1973." Planet was not a party to this letter agreement and did not enter into any other agreement with Hartenfeld. The letter agreement was never recorded with the recorder of deeds. The fee arrangement set forth in the February 12, 1973, letter was orally extended to cover services rendered by Hartenfeld to Romano in 1974, except that payment for fees would be from proceeds of mortgage financing executed in 1974. The petition concludes that the loan Planet received from Bankers in 1973 was in fact a loan to Romano, covered by the above agreement; Hartenfeld was not paid from this loan, which entitled him to an equitable lien on the loan proceeds; the equitable lien in the proceeds can be traced to the subject land; and the land value was far in excess of Bankers' approximately 6.7 million dollar superior lien, establishing a residual fund from which to satisfy his equitable lien. Intervenor conceded his subordinate position to Bankers' lien.

On February 8, 1977, after notice to all interested parties, the subject land was sold at a sheriff's sale to Bankers, the sole bidder, for $7,662,956.71, the principal amount of the loan. On February 14, 1977, the trial court granted Hartenfeld's petition to intervene over Bankers' objections. On March 3, 1977, the trial court "approved, ratified and confirmed" the sheriff's report of the sale, specifically finding that: the sale "in every respect proceeded in due form of law"; Bankers duly purchased the land for $7,622,956.71; Bankers was entitled to a deficiency judgment of $1,146,647.76 for interest and attorney's fees; the sheriff was to immediately execute and to deliver to Bankers a deed, which would entitle it to immediate possession; and the court retained jurisdiction of the subject matter and parties for the enforcement of the order and all matters in connection therewith. CT&T and Planet waived their statutory right to redemption.

During the hearing on intervenor's petition on June 7, 1979, Hartenfeld testified that Romano had interests in 100 to 150 pieces of property.

Romano, not Planet, retained him as counsel. Other than the written agreement of February 12, 1973, he had never discussed taking a secured position with respect to any property. When Romano failed to pay him the fees, he brought a separate action against Romano resulting in a consent judgment of $150,000 entered on June 17, 1977. He never attempted execution on this judgment against Romano. Planet was not a party to this action. Over Bankers' objection that an inadequate foundation had been laid, intervenor testified that the fair market value of the 66 acres was far in excess of the 7.6 million dollars paid at the 1977 sheriff's sale. On cross-examination he admitted that the planned unit development zoning restrictions applying to the subject property had expired. He was unaware of what use could be established on the property under the then current zoning, nor was he aware of recent sales of comparable property or any other facts tending to establish his expertise as an appraiser of property values. Bankers' motion to strike intervenor's opinion as to property value was denied as was its subsequent offer to prove through witnesses that the sale price reflected the fair market value of the property at the time of sale.

On June 14, 1979, the trial court declared the existence of a $150,000 equitable lien on the subject property, and against the proceeds of any sale thereof, "subservient only to the amount bid in by Bankers Trust (Reo Resources) at the Sheriff's sale on February 8, 1977 in the amount of $7,622,956.71." On February 13, 1980, the parties stipulated to the court that the land had recently been sold to a third party for 10.2 million dollars, the sale to be consummated on February 14, 1980. The order notes that the parties also stipulated that intervenor's claimed lien would be superior to the claimed developmental expenses of the subject property, sales commissions, costs of funds, or any other expenses in excess of $7,622,956.71, staying the enforcement of such order pending an appeal without bond. Judgment in the amount of $150,000 in favor of Hartenfeld was then entered. From the foregoing, this appeal proceeds.

Bankers first contends that an equitable lien on the subject property or proceeds from its sale could not exist because the employment agreement between Hartenfeld and Romano failed to set forth the intent to create a security interest in the proceeds of Bankers' loan to Romano. Further, and in any event, Bankers claims if the agreement could be given such a construction, the loan was not made to Romano but to Planet; therefore, the putative lien provision was inapplicable. Intervenor responds that the agreement demonstrated the intent to create a security interest and that the loan to Planet must be construed as a loan to Romano under a "reverse" piercing of the corporate veil.

■■ An equitable lien can arise under quite different circumstances. For example, if an express contract sufficiently manifests the intention that

some particular property or fund is to be security for a debt, then an equitable lien may be imposed upon the property or fund so identified. Under other circumstances an equitable lien may be imposed upon particular property or fund as a result of general equitable considerations in the absence of a contractually created security agreement. (*Watson v. Hobson* (1948), 401 Ill. 191, 201-02, 81 N.E.2d 885; *Oppenheimer v. Szulerecki* (1921), 297 Ill. 81, 87-88, 130 N.E. 325; 1 Bogert, Trusts & Trustees §32 (2d ed. 1965); 4 Pomeroy's Equity Jurisprudence §1239 (5th ed. 1941); Dobbs, Remedies §4—3 (2d ed. 1976).) Bankers argues that the written contract of February 12, 1973, did not create a security interest in the property but instead was merely an agreement to pay a debt out of proceeds from an anticipated fund, citing *Hibernian Banking Association v. Davis* (1920), 295 Ill. 537, 129 N.E. 540. There the court held that the contractual intent to create a security interest in a particular piece of property must affirmatively appear in the instrument before an equitable lien will arise. Under the facts of that case, a promise to pay a debt from a specific source did not show the intention to create a security interest. Similarly worded contracts have been given the same interpretation. See, *e.g., City of Chicago v. Carpenter* (1968), 95 Ill. App. 2d 81, 238 N.E.2d 70; 51 Am. Jur. 2d *Liens* §§26, 29 (1970).

■■ A close reading of the contract drafted by Hartenfeld indicates no intention within its terms to create a security interest in the proceeds of Bankers' loan to Planet. No ambiguities in that contract language exist which require construction of the language; if there were any, inferences would have to be resolved against intervenor Hartenfeld, an attorney of many years experience and legal adviser in commercial transactions who had full knowledge of the various entities and transactions involved in Romano's affairs. (*Weiland Tool & Manufacturing Co. v. Whitney* (1969), 44 Ill. 2d 105, 116, 251 N.E.2d 242; *Pescaglia v. Gianessi* (1973), 9 Ill. App. 3d 582, 586, 295 N.E.2d 148.) Intervenor acknowledges that at best 100 parcels of property owned by Romano would have fit the description in the contract of " * * * any of your [Romano's] parcels of real estate"; Hartenfeld purported to claim a lien on the refinanced proceeds of any of them. None of them, including subject property, were described in the contract. A lien cannot be created under such an indeterminate designation. *B. Kuppenheimer & Co. v. Mornin* (8th Cir. 1935), 78 F.2d 261, 263.

■■ Nor is this case amenable to the interfusion of an equitable lien under general equitable considerations. It does not involve unjust enrichment, conversion, or other equitable grounds historically associated with the equitable lien remedy. (See, *e.g., Jacobsen v. Conlon* (1973), 14 Ill. App. 3d 306, 302 N.E.2d 471; *Calacurcio v. Levson* (1966), 68 Ill. App. 2d 260, 263-64, 215 N.E.2d 839; 4 Pomeroy's Equity Jurisprudence §§1240-1243 (5th ed. 1941).) Furthermore, an equitable lien imposed upon general

equitable considerations, rather than from a contract, is inapplicable where the parties have entered a contract covering the subject matter, yet have neglected to create a security interest therein. *Pruitt Office Machines, Inc. v. Liberty National Bank* (1950), 341 Ill. App. 146, 149, 93 N.E.2d 104.

■■ The judgment imposing an equitable lien upon the subject property or sale proceeds was apparently premised upon consideration of Planet as the alter ego and business conduit of Romano, thereby piercing the corporate veil in reverse interposition of its customary orientation. Whether sought to be pierced in either direction, however, a corporation is separate and distinct as a legal entity from its stockholders (*Boatman v. Jordan* (1968), 102 Ill. App. 2d 55, 60, 243 N.E.2d 644; *Sabath v. Mansfield* (1978), 60 Ill. App. 3d 1008, 1017, 377 N.E.2d 161), even if all the stock of the corporation is owned by one person or by many (*Bevelheimer v. Gierach* (1975), 33 Ill. App. 3d 988, 992-93, 339 N.E.2d 299). The distinction between a corporation and its owner may be disregarded only when recognition of the separate identities of the two would be fraudulent or promote illegality. *People ex rel. Troxell v. Baylor* (1973), 15 Ill. App. 3d 815, 820, 305 N.E.2d 15; *Chicago-Crawford Currency Exchange, Inc. v. Thillens, Inc.* (1964), 48 Ill. App. 2d 366, 373, 199 N.E.2d 295.

In *Stap v. Chicago Aces Tennis Team, Inc.* (1978), 63 Ill. App. 3d 23, 28, 379 N.E.2d 1298, upon which both parties rely, the appellate court reviewed the authorities with respect to factual bases upon which corporate existence has been disregarded and found among them:

> "[T]he failure to maintain adequate corporate records or to comply with corporate formalities (*Matter of Bowen Transports, Inc.* (7th Cir. 1977), 551 F.2d 171; *Berlinger's Inc. v. Beef's Finest Inc.* [(1978), 57 Ill. App. 3d 319, 372 N.E.2d 1043]); the commingling of funds and other assets (*Wikelund Wholesale Co. v. Tile World Factory Tile Warehouse* (1978), 57 Ill. App. 3d 269, 372 N.E.2d 1022); the treatment by an individual of the assets of the corporation as his own (*Finazzo v. Mid-States Finance Co.* (1965), 63 Ill. App. 2d 161, 211 N.E.2d 290); and the disregard of legal similarities and the failure to maintain arm's length relationships among related entities (*Matter of Bowen Transports, Inc.*). Another factor that may be considered in determining whether injustice will result is whether the corporation was adequately capitalized. *Gowdy v. Richter*; *State Bank of Cerro Gordo v. Benton* (1974), 22 Ill. App. 3d 1007, 317 N.E.2d 578."

A review of the evidence adduced in the instant case fails to disclose any facts which would establish a basis for invoking the alter ego doctrine. Hartenfeld himself testified that the corporation maintained separate books and records and filed separate tax returns. No evidence of com-

mingling Romano's funds with Planet's funds appears; to the contrary, a separate corporate bank account was maintained. Romano and Planet were treated separately during Planet's bankruptcy proceedings, and Romano was listed as one of Planet's creditors in the reorganization proceedings. No evidence is manifested demonstrating that Romano used any proceeds of the loan from Bankers for his personal purposes. No evidence of undercapitalization appears, and the corporation underwent a successful refinancing during the reorganization proceedings, enabling Planet to pay both its secured and unsecured debts. In the loan agreement between Bankers and Planet, in which Hartenfeld actively participated, Planet "represented and warranted" to Bankers that it had the " * * * corporate power" to carry out the terms of the loan agreement and a separate law firm, McDermott, Will and Emery, acting as corporate counsel, was to provide a legal opinion that the loan was within the powers contained in Planet's certificate of incorporation.

Countervailing evidence relied upon by intervenor to establish the requisite basis for the alter ego premise is largely evanescent. It is claimed, for example, that Planet was created for tax purposes, yet the record references reveals testimony by intervenor on this subject acknowledging first that the corporation had been in existence for two years before he met Romano and that the purpose for which it was established "I *think* it was *maybe* for tax purposes." (Emphasis added.) Other references to tax purposes are inadmissible hearsay statements. The fact of sole ownership, also raised, is without legal support in this context as well. (See *e.g., Bevelheimer v. Gierach.*) That the sole asset of the corporation was the subject property is neither significant nor unusual in a closely held corporation such as this, and the fact that Romano "handpicked" the directors adds little substance to the theory, since by statute the sole shareholder is authorized to do so. (Ill. Rev. Stat. 1963, ch. 32, par. 157.34. *Cf.* Ill. Rev. Stat. 1979, ch. 32, par. 1212.) Testimony that Romano "controlled" or "dominated" corporate officers and directors is equally conclusory. The posture of Romano's personal guarantee was not such an unusual circumstance (*Verson v. Hardt* (1969), 107 Ill. App. 2d 480, 484, 246 N.E.2d 461), and we note in passing that his wife's personal guarantee was also secured although she owned no part of the corporation. The fact that Romano referred to the property as "my golden nugget" or "my property" does not support the asserted lack of corporate structure. See *Atomic Fuel Extraction Corp. v. Estate of Slick* (Tex. Civ. App. 1964), 386 S.W.2d 180, 190.

■■ Intervenor places heavy emphasis upon language appearing in *Caspers v. Chicago Real Estate Board* (1965), 58 Ill. App. 2d 113, 117, 206 N.E.2d 787, *Chicago-Crawford Currency Exchange, Inc. v. Thillens, Inc.* (1964), 48 Ill. App. 2d 366, 373, 199 N.E.2d 295, and *People ex rel. Scott v.*

*Pintozzi* (1971), 50 Ill. 2d 115, 128-29, 277 N.E.2d 844, to the effect that where facts demonstrate a situation in which the separateness of the individual and corporation has been dissipated and the adherence to the fiction of a separate existence would sanction a fraud or promote injustice, the alter ego doctrine will be applied. Bankers does not quarrel with the principle cited but claims it is inapplicable because no fraud or injustice has been or could have been alleged, particularly where, as in this case, the party seeking to pierce the corporate veil has shown that he was fully cognizant of Planet's existence as a corporation throughout his ongoing dealings with Romano as Romano's attorney; that the fee arrangement relied upon by intervenor himself acknowledged Planet's existence as a separate entity, and that intervenor acted as counsel and agent of the corporation, fostering that image and helping to induce others to deal with it on a corporate basis, particularly Bankers, citing *Loewenthal Securities Co. v. White Paving Co.* (1932), 351 Ill. 285, 294-96, 184 N.E. 310, *Atomic Fuel Extraction Corp. v. Estate of Slick* (Tex. Civ. App. 1964), 386 S.W.2d 180, 190-91, *B-W Acceptance Corp. v. Porter* (5th Cir. 1978), 568 F.2d 1179, 1183 n.4, *Brunswick Corp. v. Waxman* (E.D.N.Y. 1978), 459 F. Supp. 1222, 1231-32, and *Minchen v. Van Trease* (Tex. Civ. App. 1968), 425 S.W.2d 435, 438. We agree. It is difficult to understand how Hartenfeld could both promote yet attack the asserted corporate existence under the facts before us, especially since no fraud or cognizable injustice has either been alleged in his petition to intervene or proven. The imposition of an equitable lien in Hartenfeld's favor under these circumstances is unsupportable and must be reversed.

■■ Still another reason exists apart from the inapplicability of the equitable lien doctrine, for which reversal is mandated. The February 8, 1979, sheriff's sale of the land for approximately 7.6 million dollars was approved by the trial court on March 4, 1977; yet the court entered an order on February 13, 1980, finding that the land's fair market value at the sheriff's sale was 10.2 million dollars, and that the appellee's subordinate lien was to be satisfied from the residual fund created beyond Bankers' 7.6 million dollar superior lien. In using the value of the land as sold in 1980 as the value of the land at a point in time three years earlier, the trial court erred. The adequacy of a price received at a sheriff's sale is properly focused upon the value on the date of the sale (*Straus v. Anderson* (1937), 366 Ill. 426, 9 N.E.2d 205; *In re Marathon Foundry & Machine Co.* (7th Cir. 1956), 239 F.2d 122, *cert. denied* (1957), 353 U.S. 912, 1 L. Ed. 2d 665, 77 S. Ct. 669), not the value of offers made to the purchaser subsequent to the sheriff's sale (*Glanz v. Taken* (1937), 293 Ill. App. 74, 78, 11 N.E.2d 634), or a value based on a resale after the sheriff's sale. *Consolidated Loans, Inc. v. Guercio* (La. App. 1966), 200 So.2d 717.

■■ Had intervenor entertained any doubt as to the adequacy of expected

bids at the sheriff's sale, he could have petitioned for the establishment of an upset sale price (see *Levy v. Broadway-Carmen Building Corp.* (1937), 366 Ill. 279, 8 N.E.2d 671), but he did not. He might also have sought an evidentiary hearing on the sufficiency of the bid after the sale (see *Kraus Bond & Mortgage Organization, Inc. v. Vicari* (1939), 300 Ill. App. 192, 199, 20 N.E.2d 865) but again refrained from so moving. It is the policy of the law to give stability and permanency to judicial sales. (*Checkley & Co. v. Citizens National Bank* (1969), 43 Ill. 2d 347, 350, 253 N.E.2d 441.) The trial court's vacatur of the sheriff's sale confirmation three years later based upon the actual resale price subsequently obtained clearly violated this policy. The firmly established rule, that unless there is evidence of mistake, fraud, or violation of duty by the officer conducting the judicial sale, a mere inadequacy of price is not a sufficient cause for tampering with that sale, has also been ignored. See, *e.g., Uptown Federal Savings & Loan Association v. Walsh* (1973), 15 Ill. App. 3d 626, 632, 305 N.E.2d 74.

■■ For this first time, on appeal, Hartenfeld argues that the June 17, 1977, law judgment against Romano establishes a lien on the subject land as an alternate to the equitable lien theory employed at trial. Had this theory been properly prosecuted in the trial court, it would have failed in any event. First, any interest Romano may have had in the subject property was extinguished by the decree of foreclosure and sale of the property entered on June 24, 1976, and confirmed on March 3, 1977, without right of redemption by CT&T and Planet. Intervenor's judgment against Romano was not entered until more than three months later, June 17, 1977, at which time no property interest existed to which such a lien could have been extended. (See, *e.g., In re Application of Klock* (1973), 10 Ill. App. 3d 752, 754, 295 N.E.2d 319, *aff'd sub nom. Echols v. Olsen* (1976), 63 Ill. 2d 270, 273, 347 N.E.2d 720.) Second, the statutory requirements for a law judgment lien were not established in the record under "An Act in regard to judgments * * * " (Ill. Rev. Stat. 1979, ch. 77, par. 1 *et seq.*), since no evidence demonstrates that the requirement of filing a memorandum or certified copy of the judgment with the recorder of deeds or registrar of titles was fulfilled. (See *Garza v. Chicago Health Clubs, Inc.* (N.D. Ill. 1971), 329 F. Supp. 936.) Similarly, the record does not disclose that the requirements for a creditor's bill have been met as set forth in *Schaeffer v. Zaltsman* (1975), 29 Ill. App. 3d 1011, 331 N.E.2d 212.

For the reasons set forth above, the judgment in intervenor Hartenfeld's favor recognizing a lien in the amount of $150,000 must be reversed.

Reversed.

STAMOS and DOWNING, JJ., concur.