SECOND DIVISION

June 3, 2003

No. 1-02-0811

NORTHWEST DIVERSIFIED, INC., as assignee of FELICJAN NIEMIEC, 

Plaintiff, 

v.

HALINA MAUER, a/k/a HALINA PTASZNIK MAUER, 

Defendant-Appellee, 

v.

LASALLE BANK N.A. as Trustee u/t/a dated 6-13-00 and known as Trust #129296 as assignee of NORTHWEST DIVERSIFIED, INC.,

Levy Sale Purchaser-Appellant. 

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the 

Circuit Court of

Cook County.

Honorable

Samuel J. Betar III, 

Judge Presiding.

JUSTICE BURKE delivered the opinion of the court:

Levy sale purchaser LaSalle Bank N.A. (LaSalle) appeals from an order of the circuit court granting defendant Halina Mauer's motion to set aside a real estate sale and to extend the redemption period.  On appeal, LaSalle contends that the trial court erred in setting aside a sheriff's sale of the property because no irregularity occurred in the sale; in particular, there was evidence, through an office custom and practice, demonstrating that Mauer received a copy of an appraisal of the property and a 60-day notice required by section 12-911 of the Code of Civil Procedure (Code) (735 ILCS 5/12-911 (West 1998)).  For the reasons set forth below, we affirm.

STATEMENT OF FACTS

On August 5, 1997, Feligjan Niemiec obtained an 
ex parte
 default judgment against Mauer stemming from a loan Niemiec had made to Mauer.  On November 4, the trial court issued an order requiring Mauer to make installment payments of $200 per month to Niemiec.  On April 24, 1998, Niemiec filed a motion requesting a lien on Mauer's home located at 8005 North New England, Niles, Illinois, due to Mauer's failure to make the installment payments as required.  On May 30, Niemiec assigned her judgment to Northwest Diversified, Inc. (Northwest).  On June 29, Northwest issued a direction to levy against Mauer's home.  On July 8, the Cook County Sheriff's Office (the sheriff) served the levy upon Mauer by substituted service upon Jerzy Nowicki.
(footnote: 1)  Personal service upon Mauer was attempted three times and the sheriff was finally successful in serving her on September 3.  Thereafter, pursuant to statute, three commissioners were summoned to appraise Mauer's property.  The appraisal indicates that the property was valued at more than $15,000.
(footnote: 2)  On December 2, Mauer's home was sold at a sheriff's sale to Northwest for $10,124, and the sheriff issued a certificate of sale to Northwest.  

On June 14, 2000, Northwest assigned the certificate of sheriff's sale to LaSalle.  On June 15, because the period for redemption had expired, a sheriff's deed was issued to LaSalle.  On July 13, Mauer filed a motion to set aside the sale of real estate and to extend the period of redemption.  Mauer alleged that the sale should be set aside because she had never been served with the levy, a copy of the certificate of sale, or the appraisal and 60-day notice as required by section 12-911 of the Code.  According to Mauer's motion, she was unaware of any events in connection with the sale of her home until June 16, 2000, when she received a demand for possession with a copy of the sheriff's deed from LaSalle's attorney.  Mauer further alleged that the home was undersold at the sheriff's sale since she, in approximately 1988, paid $141,000 for it and, as of July 2000, it had an appraised value of $250,000.  Mauer also alleged that she and her husband, Jerzy Nowicki, were entitled to a homestead exemption since they resided in the home.  It was Mauer's contention that the sale should be vacated because Illinois law is clear that where the sale was to pay a debt, there were irregularities in the sale, and the home was undersold, the redemption period may be extended.  Attached to Mauer's motion was her affidavit, in which she averred that she had never been served with the levy, appraisal or 60-day notice, the notice of sale, the certificate of sale, or the certification of redemption, or given notice that the property would be sold. 

In their reply to Mauer's motion to set aside the sale, LaSalle and Northwest merely admitted or denied the allegations of the motion; they did not set forth any legal argument.  Thereafter, Mauer replied, stating that LaSalle and Northwest failed to present any evidence or argument to dispute the allegations in her motion and, therefore, her motion should be granted.

On October 19, 2000, pursuant to the trial court's order, the sheriff filed an appearance as well as a response to Mauer's motion to set aside the sale.  The sheriff denied that Mauer was not served with the levy, which was confirmed by the affidavit of Maureen Moore, attached to the sheriff's response.  The sheriff further argued that it was not his duty to serve a copy of the certificate of sale upon Mauer and, therefore, admitted that he had not done so.  Lastly, the sheriff admitted that he had not personally served Mauer with a copy of the appraisal and 60-day notice.

On October 31, 2001, Northwest filed a supplemental response to Mauer's motion to set aside the sale, contending that Mauer was twice served with the levy, once personally and once by substituted service.  Northwest further argued that Mauer had been served with the appraisal and 60-day notice.  Attached to its response was the affidavit of Carmen Zinke.  According to Zinke, from 1998 until 2001, it was the practice and procedure of the Real Estate and Judicial Sales Division of the sheriff's office to mail every debtor the notice required by section 12-911.  Zinke further stated that it was not the practice or procedure of the department to keep a copy of the notices mailed until sometime in 2000.

On November 6, the trial court granted Mauer's motion to set aside the sale and ordered the June 15, 2000, sheriff's deed null and void.  The court ordered LaSalle or Northwest to provide Mauer with the payoff judgment amount by November 20.  On November 21, Mauer filed a motion for a rule to show cause and for sanctions against LaSalle and Northwest because no payoff amount had been provided to her.  

On November 29, Northwest filed a motion to reconsider the November 6 order.  Northwest alleged that Mauer had made material misstatements in her pleadings, that under section 12-116 of the Code, Northwest did not have notice of any irregularities in the sale and, therefore, such irregularities could not be used to vacate the sale, and that the lack of a copy of the 60-day notice sent to Mauer did not constitute an irregularity.  Attached to Northwest's motion to reconsider were three new affidavits: those of Zinke, Salvatore Aloisio, and Kenneth Swiatek, Northwest's president.
(footnote: 3)  Zinke averred that she was responsible for processing directions to levy and to complete all work necessary to effectuate a sheriff's sale and for the issuance of a sheriff's deed.  Zinke stated that she had no personal memory of the particular file at issue, but that she was able to state the procedures she followed in handling it.  Upon receiving the direction to levy, she or Aloisio opened a file and, upon payment of the necessary fees, placed the levy and a copy of the judgment with the sheriff for service on the debtor.  After service was obtained, she prepared paperwork to summon three commissioners to appraise the property.  The file in the instant case showed that the appraisal was returned on September 23, 1998.  Aloisio then assigned a sale date of December 1, 1998, and gave the file to Zinke.  Zinke placed the file in a particular holder on her desk, which was used only for those files that needed 60-day notices to be sent.  According to Zinke, she mailed a 60-day notice to Mauer on the same day Aloisio returned the file to her.  After mailing the 60-day notice, Zinke placed the file in a file drawer.  According to Zinke, she had been following this same procedure for 12 years and had followed it on every levy.  Zinke further stated that if the notice had not been sent, the file would still be on her desk in the appropriate file holder.  In addition, there was no indication on the file that the notice had been returned.  Zinke also stated that the file indicated that a notice of publication was signed on October 9, 1998.  Lastly, Zinke stated that prior to 1999, she never kept copies of 60-day notices unless they had been returned by the post office.

Aloisio averred in his affidavit that he was Zinke's supervisor.  Aloisio also stated that upon receipt of the direction to levy on Mauer's home, he placed this along with a copy of the judgment with the sheriff for service.  According to Aloisio, after the return of the substituted service on Jerzy Nowicki, Aloisio spoke with Swiatek, who requested that the levy be re-served personally on Mauer.  Aloisio then directed the sheriff to re-serve Mauer, who was served on September 3.  Upon receipt of the return of service, Aloisio then directed Zinke to summon three commissioners to perform an appraisal, which was returned on September 23.  Sometime between September 23 and October 1, Swiatek appeared in Aloisio's office and picked a date of sale, which was December 1, 1998.  Aloisio then made a notation of the date on the levy file as well as on the sheriff's computer database.  Thereafter, he immediately placed the file in its designated spot on Zinke's desk where all files were placed for mailing of the 60-day notices.  On October 9, Aloisio pulled the file from the file drawer, where files were placed after the 60-day notices had been mailed.  According to Aloisio, having found the file in its proper place, he executed the sheriff's notice of publication.  Aloisio further stated that, at the time the 60-day notice was mailed to Mauer, it was not the procedure of the sheriff's office to maintain a copy of the notice, nor to make any notations that the notice had been sent.  However, it was his position that 60-day notices were always mailed in the ordinary course of business and that the only way the office kept track of notices was to move the file from Zinke's desk to the filing cabinet.  Aloisio also stated that "as Selling Officer ***, [he] will not let a file go to sale unless all established procedures in the Sheriff's Office are followed in accordance with law and in accordance with our ordinary course of business."  Thus, he concluded that Mauer was served with a 60-day notice.

On February 14, 2002, the trial court denied Northwest's motion to reconsider.  Northwest was again ordered to provide a payoff amount to Mauer by March 14, 2002.  This appeal followed.

ANALYSIS

LaSalle contends that Mauer was not entitled to have the sheriff's sale set aside because there were no irregularities in the sale; particularly, evidence presented of a custom and practice demonstrated that Mauer was served with the 60-day notice as required by section 12-911 of the Code.  Mauer, on the other hand, argues that an irregularity existed because she was not served with the 60-day notice.  Despite other issues raised by the parties, the dispositive issue here is what type of service of the 60-day notice is required under section 12-911 of the Code and whether this section was satisfied here.

Generally, our standard of review of a trial court's decision to set aside a sheriff's sale is whether the trial court abused its discretion.  
Merchants Bank v. Roberts
, 292 Ill. App. 3d 925, 930, 686 N.E.2d 1202 (1997).  However, where, as here, the trial court heard no testimony and based its decision entirely on documentary evidence, "the rationale underlying a deferential standard of review is inapplicable, and a reviewing court will make an independent decision on the facts."  
Muller v. Firemen's Fund Insurance Co.
, 289 Ill. App. 3d 719, 724, 682 N.E.2d 331 (1997).  See also 
Rosenthal-Collins Group L.P. v. Reiff
, 321 Ill. App. 3d 683, 687, 748 N.E.2d 229 (2001).  In addition, because we are required to construe a statute, which involves a question of law, the trial court's ruling is subject to 
de novo
 review.

LaSalle argues that the evidence, based upon the custom and practice of the sheriff's office, demonstrated that Mauer was served with the 60-day notice required by section 12-911 of the Code. LaSalle relies on the affidavit of Carmen Zinke.  Additionally, LaSalle argues that section 12-150 of the Code does not require the sheriff to retain proof of service as the trial court held.
(footnote: 4) LaSalle maintains that no irregularity occurred in the instant case that would warrant setting aside the sale because the procedure was the same for every levy sale in Cook County and, were this court to require the sheriff to retain proof of service, many levy sales would be subject to collateral attack.
(footnote: 5)  In this regard, LaSalle further argues that it had no notice of any alleged irregularities and, pursuant to section 12-116 of the Code, the sale cannot be voided without such notice to LaSalle. 

Mauer argues that an irregularity existed in the sale because she was not given the 60-day notice as required by law.  According to Mauer, the sheriff admitted in his response to her motion that he did not serve her with the 60-day notice.
(footnote: 6)  Mauer further argues that neither LaSalle nor Northwest presented any physical evidence that she had been served with this notice.  With respect to Zinke's affidavit (the second one), Mauer maintains that Zinke admitted she was unfamiliar with Mauer's sale and, thus, she had no personal knowledge, thereby making her affidavit insufficient.  Mauer further maintains that when an irregularity exists and a home is undersold, the deed must be voided.

LaSalle responds that section 12-911 of the Code does not require the sheriff to keep a copy of the notice, nor require any particular mode of service as the trial court erroneously concluded.  LaSalle maintains that service can be proven by methods other than a physical copy of the notice, which Northwest did through the affidavits it submitted.  As such, LaSalle contends that it proved service on Mauer by proof of an office custom.  Specifically, LaSalle argues that the affidavits of Zinke, Aloisio, and Swiatek established an office custom.  LaSalle further argues that there is a presumption that if something is put in the mail, and not returned, it was received.
(footnote: 7)  LaSalle also argues that Mauer's claim that she did not receive the 60-day notice is uncredible in light of her deceptive testimony in the prior foreclosure proceeding, 
i.e.
, that she was on a plane at the time of the alleged service upon her, but evidence demonstrated that the flight had been cancelled, as well as her insistence that Nowicki was entitled to the homestead exemption.

"The sale of one's property to satisfy his debt to another is a drastic remedy, and the provisions of the law by which it is brought about must be strictly complied with, and, where this is not done, courts will, where the price is inadequate, allow redemption upon equitable terms though the period of redemption has expired."  
Block v. Hooper
, 318 Ill. 182, 187, 149 N.E. 21 (1925).  See also 
Mohr v. Sibthorp
, 395 Ill. 418, 424, 69 N.E.2d 487 (1946).  In 
Mohr
, the court further stated:

   "The policy in this State, where no innocent parties are involved, is to permit a judgment debtor to redeem upon equitable terms even though the period of redemption has expired, where the provisions of the law have not been complied with and the judgment creditor would otherwise gain a benefit to which he is not entitled.  [Citations.]  Likewise, where land has sold for an inadequate price, irregularities will be seized up to set aside an execution or judicial sale and to permit the judgment debtor to redeem.  We will protect judicial sales to the end that creditors be paid their debts and that the purchasers at such sales shall not lose, and such sales will not be set aside for inadequacy of price, alone.  However, we have also announced the policy that it is not the primary or other purpose of the law to protect one who seeks the disproportionate benefit of procuring a valuable property for little or no outlay.

***  This court has held that a redemption, although a statutory privilege and to be exercised in substantial compliance with the statute, is nevertheless looked upon with favor and unless injury is to result to the purchaser at the sale a liberal construction will be given redemption laws."  
Mohr
, 395 Ill. at 424.

As previously stated above, this case requires us to construe a statute and our review is 
de novo
.  As such, the parties' arguments with respect to credibility, or lack thereof, are irrelevant and need not be further addressed.

The primary goal of statutory construction is to ascertain and give effect to the intent of the legislature and the most reliable indication of the legislature's intent is the plain language of the statute itself.  
Premier Property Management, Inc. v. Chavez
, 191 Ill. 2d 101, 121, 728 N.E.2d 476 (2000).  We must examine the language as a whole and consider each part or section in connection with every other part or section.  
Antunes v. Sookhakitch
, 146 Ill. 2d 477, 484, 588 N.E.2d 1111 (1992).  Where the legislature uses certain words in one instance and different words in another, the legislature intends different results.  
People ex rel. Ryan v. McFalls
, 313 Ill. App. 3d 223, 227, 728 N.E.2d 1152 (2000).  We must construe the statute so that no word or phrase is rendered meaningless.  
Westcon/Dillingham Microtunneling v. Walsh Construction Co. of Illinois
, 319 Ill. App. 3d 870, 875, 747 N.E.2d 410 (2001).  Additionally, "[i]f possible, courts must give effect to every word, clause, and sentence and may not read a statute so as to render any part inoperative, superfluous, or insignificant."  
Newland v. Budget Rent-A-Car Systems, Inc.
, 319 Ill. App. 3d 453, 456, 744 N.E.2d 902 (2001).  "The court, however, must construe the statute as written and may not, under the guise of construction, supply omissions, remedy defects, annex new provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of the language employed in the statute."  
In re County Treasurer and Ex-Officio Collector of Cook County
, 323 Ill. App. 3d 1044, 1049, 753 N.E.2d 363 (2001).  Where the language of a statute is clear, the court need look no further than the language itself.  
Puszkarska v. Chicago Transit Authority
, 322 Ill. App. 3d 75, 79, 748 N.E.2d 755 (2001).

Prior to a sheriff's sale taking place, the homeowner or judgment debtor is forewarned and given an opportunity to avoid the sale.  First, after the judgment creditor issues a direction to levy, the sheriff's office, upon proof that the judgment lien was properly recorded, prepares a certificate of levy in the form described in section 12-153 of the Code.  735 ILCS 5/12-153 (West 1998).  This certificate notifies everyone that by virtue of a judgment against the judgment debtor, the judgment creditor has levied against the premises specifically described in the certificate.  Pursuant to statute, this certificate of levy is then to be filed in the office of the recorder in the county in which the real estate is located.  735 ILCS 5/12-152 (West 1998).  No service upon the judgment debtor, in any manner, of this certificate of levy is required by statute.  However, it has been noted that the "levy should be personally served upon the judgment debtor if possible."  Raymond Ostler, 
Enforcing Judgments Against Real Estate in Illinois: A Step-By-Step Guide
, 89 Ill. B.J. 234, 237 (2001).  This is so because the Illinois Supreme Court "has long held that the statutory provisions that allow a judgment debtor to timely assert exemptions strongly favor service 'whenever practicable.'  [Citation.]"  Raymond Ostler, 
Enforcing Judgments Against Real Estate in Illinois: A Step-By-Step Guide
, 89 Ill. B.J. at 237.  See 
Rogers v. Barton
, 386 Ill. 244, 249, 53 N.E.2d 862 (1944).  Presumably, based upon this latter principle, it is, and has been, the custom and practice of the sheriff's office to personally serve the certificate of levy upon the judgment debtor.  In the instant case, both Zinke and Aloisio, in describing their practice with respect to every levy, averred that the judgment along with the levy is placed with the sheriff for service on the debtor.  Based upon the above principles espoused by our supreme court, we believe that personal service of the levy, although not required by statute, is appropriate and the better practice given the vital nature of this notification to a homeowner that her property is subject to loss.

Next, when a homestead exemption applies, as in the instant case, three commissioners are summoned to appraise the property.  735 ILCS 5/12-910 (West 1998).  This is where the section at issue comes into play.  Section 12-911 of the Code provides:

"In case the value of the premises is, in the opinion of the commissioners, more than $7,500, and cannot be divided as is provided for in Section 12-910 of this Act, they shall make and sign an appraisal of the value thereof, and deliver the same to the officer, who shall 
deliver a copy thereof to the judgment debtor, or to some one of the family of the age of 13 years or upward,
 with a notice attached thereto that unless the judgment debtor pays to such officer the surplus over and above $7,500 on the amount due on the judgment within 60 days thereafter, such premises will be sold."  (Emphasis added.)  735 ILCS 5/12-911 (West 1998).

This provision gives a homeowner a last chance to avoid the sale of her home and the possible loss of her property in its entirety.  Thus, we believe this, too, is a vital notification to the homeowner.  See 
Bullen v. Dawson
, 139 Ill. 633, 643, 29 N.E. 1038 (1892) ("[i]f such demand had been made or notice given, [the owner] would have had an opportunity, by paying off the judgment, to save his property from sacrifice").  

No case in Illinois has addressed the type of service required under section 12-911 of the Code.  Contrary to LaSalle's argument that this section does not require any particular mode of service, we believe that it does.  Although section 12-911 does not contain the term personal service, we find that the express language of section 12-911 mandates personal service.  Section 12-911 uses the term "deliver."  It does not use the terms "send" or "mail," or any other term synonymous with providing notice through the mail.  Again, it uses the term "deliver."   "Deliver" means to "give, transfer: yield possession or control of: make or hand over; make delivery of."  Webster's Third New International Dictionary 597 (1993).  "Deliver" has also been defined as "[t]o surrender to another, hand over" and "[t]o take to the intended recipient."  American Heritage Dictionary 378 (2d ed. 1985).  These definitions imply face-to-face or personal service.  In addition, section 12-911 provides a mechanism for substituted service, 
i.e.
, upon someone 13 years of age or older that is a family member.  This latter language alone demonstrates that personal service is required.  If the sheriff were simply required to mail the notice, there would be no need to include such additional language in the provision.  To interpret section 12-911 in any other way would be to ignore this language and to render it meaningless.  Thus, again, although the term personal service is not used, the actual language of the provision connotes personal service.  Lastly, the language of section 2-203 of the Code, addressing service of process following the commencement of a lawsuit, is instructive and supports such a conclusion.  The language of section 2-203 is similar to that set forth in section 12-911.  Specifically, section 2-203 provides that service shall be made "by leaving a copy thereof with the defendant personally," or "by leaving a copy at the defendant's usual place of abode, with some person of the family, of the age of 13 years or upwards."  735 ILCS 5/2-203 (West 1998).  Clearly, section 2-203 provides for personal service or substituted service, which, too, must be personal.

Accordingly, we find that the 60-day notice, along with the appraisal, are required to be served by the sheriff upon the property owner personally or through substituted service.  Based on this conclusion, even were we to find that the affidavits offered by Northwest in support of its motion to reconsider are proper, which they are not because they were offered by Northwest for the first time in connection with its motion to reconsider and without reasonable explanation as to why they were not timely submitted (
Cabrera v. First National Bank of Wheaton
, 324 Ill. App. 3d 85, 101, 753 N.E.2d 1138 (2001); 
Woolums v. Huss
, 323 Ill. App. 3d 628, 640, 752 N.E.2d 1219 (2001); 
Montano v. City of Chicago
, 308 Ill. App. 3d 618, 622, 720 N.E.2d 628 (1999)) and, even were we to find that these affidavits clearly established and proved a custom and practice on the part of the sheriff's office to mail a copy of the 60-day notice to all homeowners, such custom and practice is nonetheless irrelevant.  This custom and practice is insufficient to satisfy the mandates of section 12-911 of the Code and in contravention of the express language of that provision.  Here, the sheriff's department has admitted, in its response to Mauer's motion to set aside the sale, that there was no personal service on Mauer.  Accordingly, the statute was not strictly complied with and an irregularity existed in the sale.

We also conclude that Mauer's property was in fact sold at a  grossly inadequate price.  As stated above, the home was sold to Northwest for $10,124.  The commissioners' appraisal itself valued the property at greater than $15,000.  Moreover, an examination of the public records in connection with the property would have demonstrated that, in 1988, it was worth $141,000.  Thus, even based on that outdated figure, Northwest paid only 7% of the value of the property.  We further note that although Mauer contends that the value of the property was $250,000, the inadequacy of the price focuses upon the value on the date of the sale and not a date subsequent thereto.  
Bankers Trust Co. v. Chicago Title & Trust Co.
, 89 Ill. App. 3d 1014, 1021, 412 N.E.2d 660 (1980).  

Based on our conclusion that an irregularity existed in the sale based on the fact Mauer was not personally served with the 60-day notice and Mauer's home was sold at a grossly inadequate price, we find that there were sufficient grounds to set aside the sale.  Accordingly, the trial court did not err in doing so.

CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAHILL and GARCIA, JJ., concur.

FOOTNOTES
1:
Nowicki and Mauer were married on February 13, 1999.

2:
The appraisal form does not provide for an exact amount.  It merely contains two lines to mark; either the property is valued at less than $15,000 or it is valued at $15,000 plus.

3:
Although Swiatek attempted to show a custom and practice in  the sheriff's office through his averments, this was improper because he was not an employee of that office.  Swiatek also outlined his conduct in following the course of the proceedings and his visits and contacts with the sheriff's office.

4:
This section was not raised by LaSalle or Northwest before the trial court.  Thus, it is deemed waived.  
Jones v. Chicago HMO, Ltd. of Illinois
, 191 Ill. 2d 278, 306, 730 N.E.2d 1119 (2000). In any event, there is nothing in this provision pertaining to service and, more particularly, pertaining to service of the 60-day notice.

5:
Whether this is true or not is irrelevant if the statute requires otherwise.  The sheriff is presumed to know and follow the law as written.  

6:
We note that the sheriff only admitted that he had not 
personally
 served Mauer with a copy of the notice.  He argued that he had served her through the mail, based upon his office's custom and practice.

7:
Again, neither Northwest nor LaSalle raised this argument before the trial court.  In fact, LaSalle did not raise the issue here until its reply brief.  Thus, this issue has been waived.  
Hartmarx Corp. & Subsidiaries v. Bower
, 309 Ill. App. 3d 959, 969, 723 N.E.2d 820 (1999) (issues not raised until the reply brief are waived).