THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EMMANUEL ROBINSON, Defendant-Appellant.

First District (5th Division)    No. 1—00—3309

Opinion filed September 26, 2003.

Deborah L. Mahoney, of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Annette Collins, and Owen D. Kalt, Assistant State's Attorneys, of counsel), for the People.

JUSTICE REID delivered the opinion of the court:

This matter is an appeal arising from an order of the trial court summarily dismissing defendant Emmanuel Robinson's petition for postconviction relief. Following a bench trial, Emmanuel Robinson was found guilty of first degree murder, attempted murder and aggravated battery with a firearm. He received concurrent sentences of 45 years for the murder, 20 years on the attempted murder and 20 years on the aggravated battery with a firearm. On direct appeal, this court affirmed the murder and attempted murder convictions but vacated the conviction for aggravated battery with a firearm. For the reasons that follow, we reverse the summary dismissal of the postconviction petition and remand the matter for further proceedings.

## BACKGROUND

On July 10, 1997, Tommy McNeal (Tommy) was killed and his brother, Raleigh McNeal (Raleigh), was shot in an apparent drug-related incident. At trial, Raleigh testified that he and his brother were standing on the street corner in front of their mother's home. They were selling heroin while their family members were all outside. Raleigh and his brother were approached by a gray four-door car. Robinson emerged from the car along with his codefendant, Arthur Wilson. Raleigh recognized Robinson because they lived in the same neighborhood and had known each other for approximately four years. Robinson warned the McNeal brothers to stop selling drugs on that corner because their sales were reducing Robinson's own profits. Raleigh testified that Tommy falsely denied selling drugs. Raleigh also testified that Robinson threatened to kill them. Robinson and Wilson then got back into the car and left the scene.

Later, at approximately 9 p.m. that evening, the McNeal brothers were back out on the corner. Again, Raleigh claimed that many of his family members were outside, including Raleigh's sister Claire McNeal (Claire). Both Raleigh and Claire saw a sensor light in the gangway illuminate when three men dressed in black emerged. Raleigh testified that he recognized two of the men as Robinson and Wilson. In addition to black pants and black turtleneck shirts pulled up to their lower lips, the three men wore black skullcaps. Claire testified that she did not see anything covering the men's faces and that she did not tell the police that the men wore masks. Raleigh testified that Robinson and the others opened fire. Raleigh was shot in the leg and Tommy was fatally wounded. When the police arrived, Raleigh gave

Robinson's name. Three days later, Raleigh and Claire both picked Robinson out of separate lineups.

The crime scene was processed by Officer John Naujokas. Officer Naujokas recovered spent .38 automatic cartridges at the curb along with spent 9-millimeter cartridges. The medical examiner, Dr. Thamrong Chira, testified that Tommy died from multiple gunshot wounds. The accompanying toxicology report indicated that Tommy's blood-alcohol concentration was in excess of the legal limit for driving when he was killed.

Robinson presented his grandmother as a witness. She testified that Robinson was at her house from 5 p.m. until approximately 8:45 p.m. on the day in question. Robinson's grandmother also testified that, when Robinson left the house that evening, he was wearing a white T-shirt and blue jeans. On cross-examination, the prosecutor elicited from Robinson's grandmother that her house was approximately one block from the scene of the crime.

Both sides then made their closing arguments, after which the trial court made a factual finding that Raleigh and Claire were both credible witnesses. The trial court found that both of them had an unobstructed opportunity to see the shooters from a vantage point close enough to allow them to be identified. The trial court also specifically found that small discrepancies in the testimony of the eyewitnesses were adequately explained as being caused by nerves and anxiety. The trial court then found Robinson guilty of first degree murder and attempted first degree murder.

On direct appeal, Robinson was represented by two different attorneys, neither of whom represented Robinson at trial. The first public defender sent Robinson a letter indicating that he would be better off not choosing to file a direct appeal. That attorney indicated that the trial court had made a sentencing error in his favor and, by seeking direct appeal, Robinson might be alerting the prosecution or the trial court to the error, which could result in a longer period of incarceration. The public defender also indicated to Robinson that the choice was entirely his. Thereafter, the public defender filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967). This court denied the public defender's request to withdraw, ordering him to file an appellate brief on Robinson's behalf. Robinson thereafter filed a motion for leave to proceed *pro se*, which this court denied.

The public defender subsequently filed a brief based upon the one-act, one-crime doctrine. Robinson filed a motion for leave to file a *pro se* supplemental brief. The State then filed a confession of error with respect to the one-act, one-crime issue. This court thereafter issued an

order granting the State's confession of error, ordering the trial court to correct the mittimus. This court also denied Robinson's request to file the *pro se* supplemental brief. This court did, however, issue an order permitting the defense to file an additional brief on direct appeal. In that brief, the assistant appellate defender asserted that the sentencing court erred in considering three victim impact statements instead of just one. This court, in an order pursuant to Supreme Court Rule 23, affirmed the trial court's judgment. *People v. Robinson*, No. 1—99—2348 (November 21, 2001) (unpublished order under Supreme Court Rule 23).

While the direct appeal was pending, Robinson filed a postconviction petition. Robinson claims that he was denied a fair and impartial trial because the trial court was predisposed to find him guilty in light of his confession, which was later suppressed. Robinson also claims that trial counsel was ineffective for failing to object to hearsay statements of witnesses, investigate the case, object to uncorroborated testimony about defendant's drug activities, and move for substitution of judge. In support of his contentions, Robinson argues that potential witnesses Yolanda McNeal, Dye Damen, Dorothy Shaw and Lawrence McNeal were listed in various police progress reports yet not interviewed by counsel. Robinson also argues that his lawyer failed to investigate notes in a police progress report that the victims' family had a prior criminal history. Robinson also argues that his attorney should have secured a firearms expert to testify about how far spent shell casings are ejected from automatic weapons similar to those allegedly used by Robinson and Wilson. He argues that there was no explanation as to why there were shell casings found across the street but none where Robinson allegedly was standing, shooting the victims. Robinson also argues that his removal from his home without a warrant, detention by the police and participation in a police lineup constituted an unlawful seizure. Robinson argues that a motion to suppress evidence and quash the arrest was made but later abandoned by trial counsel without his consent. Robinson also claims that his trial counsel was ineffective because: (1) some of his objections were found by the trial court to be irrelevant, (2) he failed to cross-examine all of the State's witnesses, (3) he failed to object to improper in-court identification of the defendant by a witness who testified Robinson was taller than he actually is, and (4) he failed to present any oral arguments for defendant on posttrial motions.

On August 25, 2000, the trial court summarily dismissed the postconviction petition as frivolous and patently without merit. The order of dismissal was not mailed to Robinson within the 10-day period specified in section 122—2.1 of the Post-Conviction Hearing Act (725

ILCS 5/122—2.1 (West 2000)). Specifically, the court clerk was two days late in mailing said order. Despite this error, Robinson mailed his notice of appeal in a timely fashion.

## ANALYSIS

### I

■ Robinson argues on appeal that Public Act 83—942 (Pub. Act 83—942, eff. November 27, 1988), which amended the Post-Conviction Hearing Act by adding the provision for summary dismissal of a post-conviction petition, violated the single subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)). Because of the alleged single subject violation, Robinson argues he has raised the gist of a constitutional claim sufficient to survive the summary dismissal stage of the Post-Conviction Hearing Act. The State responds that this issue has been conclusively resolved by the Illinois Supreme Court. We agree. This argument was rejected by the Illinois Supreme Court in *People v. Boclair*, 202 Ill. 2d 89, 108-13 (2002) ("Here, looking beyond the title, we conclude that, on its face, Public Act 83—942 relates to a single subject: the criminal justice system"). Public Act 83—942 does not violate the single subject rule. *People v. Diehl*, 335 Ill. App. 3d 693 (2002), citing *Boclair*, 202 Ill. 2d at 113. We need not discuss the matter further.

### II

■ The Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq.* (West 2000)) provides a remedy whereby defendants may challenge their convictions or sentences for violations of federal or state constitutional law. *People v. Coleman*, 206 Ill. 2d 261, 277 (2002), citing *People v. Towns*, 182 Ill. 2d 491, 502 (1998); *People v. Tenner*, 175 Ill. 2d 372, 377 (1997). A postconviction action is a collateral proceeding and not an appeal from the underlying judgment. *Coleman*, 206 Ill. 2d at 277, citing *People v. Williams*, 186 Ill. 2d 55, 62 (1999). The purpose of the proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal. *Coleman*, 206 Ill. 2d at 277, citing *People v. Griffin*, 178 Ill. 2d 65, 72-73 (1997); *People v. Mahaffey*, 165 Ill. 2d 445, 452 (1995). Thus, *res judicata* bars consideration of issues that were raised and decided on direct appeal, and issues that could have been presented on direct appeal, but were not, are considered waived. *Coleman*, 206 Ill. 2d at 277, citing *Towns*, 182 Ill. 2d at 502-03.

■ "In cases not involving the death penalty, the Act establishes a three-stage process for adjudicating a petition for postconviction

relief." *People v. Morris*, 335 Ill. App. 3d 70, 76 (2002), citing *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). "At the first stage of a postconviction proceeding, the circuit court determines whether the petition alleges a constitutional infirmity that, if proven, would necessitate relief under the Act." *Morris*, 335 Ill. App. 3d at 76, citing *People v. Coleman*, 183 Ill. 2d 366, 380 (1998). "The first stage represents a pleading question. Unless positively rebutted by the record, all well-pleaded facts are taken as true at this stage, and the trial court's determination is subject to *de novo* review." *Morris*, 335 Ill. App. 3d at 76, citing *Coleman*, 183 Ill. 2d at 385. "If the petition is not dismissed and survives the first stage of the postconviction process then subsection (b) of section 122—2.1 of the Act provides that the court shall order the petition to be docketed for further consideration in accordance with Sections 122—4 through 122—6.' " *Morris*, 335 Ill. App. 3d at 76, quoting 725 ILCS 5/122—2.1(b) (West 1998). "At the second stage of the postconviction process, the State is required to either answer the pleading or move to dismiss." *Morris*, 335 Ill. App. 3d at 76, citing 725 ILCS 5/122—5 (West 1998). "If at the second stage a substantial showing of a constitutional violation is established, the petition is advanced to the third stage for an evidentiary hearing." *Morris*, 335 Ill. App. 3d at 76, citing 725 ILCS 5/122—6 (West 1998); *Gaultney*, 174 Ill. 2d at 418. Robinson's postconviction petition did not survive the first stage of the process, so we will confine our remarks to that stage.

Robinson's postconviction petition turns on his allegations that the representation he received, both at trial and on direct appeal, amounted to ineffective assistance of counsel as defined in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). The Illinois Supreme Court has repeatedly held that "[t]o demonstrate ineffective assistance of counsel, defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that the attorney's deficient performance resulted in prejudice to the defendant." *People v. Villarreal*, 198 Ill. 2d 209, 228 (2001), citing *People v. Williams*, 181 Ill. 2d 297, 320 (1998). "In order to establish an ineffective-assistance-of-counsel claim, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Brooks*, 334 Ill. App. 3d 722, 725 (2002), quoting *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 674, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome, namely, that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. *People v. Enis*, 194 Ill. 2d 361, 376-77 (2000),

918

citing *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; *People v. Evans*, 186 Ill. 2d 83, 93 (1999). There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Enis*, 194 Ill. 2d at 376-77, citing *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065. The failure to satisfy either the deficiency prong or the prejudice prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *Enis*, 194 Ill. 2d at 377, citing *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *Wilson*, 191 Ill. 2d at 370.

■ Claims of ineffective assistance of appellate counsel are also evaluated under the *Strickland* test. *Enis*, 194 Ill. 2d at 377, citing *People v. Childress*, 191 Ill. 2d 168, 175 (2000). A defendant who claims that appellate counsel was ineffective for failing to raise an issue on appeal must allege facts demonstrating that such failure was objectively unreasonable and that counsel's decision prejudiced defendant. If the underlying issue is not meritorious, then defendant has suffered no prejudice. *People v. Rogers*, 197 Ill. 2d 216, 223 (2001), citing *Enis*, 194 Ill. 2d at 377. In reviewing the sufficiency of the evidence, the court must determine whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979). If the underlying issue is non-meritorious, the defendant has suffered no prejudice. *Rogers*, 197 Ill. 2d at 223, citing *Enis*, 194 Ill. 2d at 377. Normally, appellate counsel's choices concerning which issues to pursue are entitled to substantial deference. *Rogers*, 197 Ill. 2d at 223, citing *People v. Mack*, 167 Ill. 2d 525, 532-33 (1995).

■ In summarily dismissing the postconviction petition, the trial court indicated that Robinson's petition lacks supporting affidavits and is conclusory. We agree. "[T]he failure to either attach the necessary 'affidavits, records, or other evidence' or explain their absence is 'fatal' to a post-conviction petition (*People v. Turner*, 187 Ill. 2d 406, 414 (1999)) and by itself justifies the petition's summary dismissal." *People v. Collins*, 202 Ill. 2d 59, 66 (2002), citing *People v. Coleman*, 183 Ill. 2d 366, 380 (1998), quoting *People v. Jennings*, 411 Ill. 21, 26 (1952)).

■ Though Robinson attached copies of certain Chicago police internal progress reports and arrest reports to his petition, those attachments do not provide a satisfactory basis for concluding that the representation he received was ineffective. The contents of the petition, along with Robinson's arguments, fail to overcome the presump-

tion that his representation was competent and that the decisions made amount to matters of strategy. As to the witnesses Robinson claims his trial counsel should have investigated and called to testify, he presents nothing to indicate what that investigation might reveal. Instead, Robinson suggests that "[i]f trial counsel would have interviewed [certain witnesses], such could have lead [*sic*] to potential information that could have been used to impeach the otherwise questionable identification witnesses, Claire and Raliegh McNeal." This is both conclusory and speculative. Robinson also suggests factual and logical discontinuities in the evidence, both testimonial and physical, that he argues rise to the level of reasonable doubt of his guilt. However, Robinson fails to demonstrate with specificity how trial counsel was ineffective as a result of the tactical decisions undertaken. Because of Robinson's failure to properly support his claims, we must agree with the trial court that the petition was defective on its face. Under ordinary circumstances, with such a defective postconviction petition, summary dismissal would be appropriate.

## III

Despite the deficiencies of Robinson's postconviction petition, we now turn to the manner by which the petition was handled in the court below. The order of the trial court dismissing the petition was entered by the trial court within the time period instructed by section 122—2.1 of the Post-Conviction Hearing Act. 725 ILCS 5/122—2.1 (West 2000). However, by way of a purely clerical error made by the clerk of the circuit court, a copy of the order of court was not mailed to Robinson in the manner mandated by the applicable statute.

Section 122—2.1 reads, in pertinent part, as follows:

"§ 122—2.1. (a) Within 90 days after the filing and docketing of each petition the court *shall* examine such petition and enter an order thereon pursuant to this Section.

\*\*\*

(2) If the petitioner is sentenced to imprisonment and the court determines the petition is frivolous or is patently without merit, it *shall* dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision. *Such order of dismissal is a final judgment and shall be served upon the petitioner by certified mail within 10 days of its entry.*" (Emphasis added.) 725 ILCS 5/122—2.1 (West 2000).

The cardinal rule of statutory construction is to ascertain and give effect to the true intent of the legislature. *Premier Property Management, Inc. v. Chavez*, 191 Ill. 2d 101 (2000). Courts must view statutory sections both in their entirety as well as in context of all of the other sections in the whole of the act itself. *Northwest Diversified,*

*Inc. v. Mauer*, 341 Ill. App. 3d 27 (2003), citing *Antunes v. Sookha-kitch*, 146 Ill. 2d 477, 484 (1992). "To determine the legislature's intent, a court first looks to the statute's language, according that language its plain and commonly understood meaning. If possible, the court must give effect to every word, clause, and sentence; it must not read a statute so as to render any part inoperative, superfluous, or insignificant; and it must not depart from the statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express." *People v. Ellis*, 199 Ill. 2d 28, 39 (2002), citing *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990). In no way should part of a statute be rendered meaningless. *Northwest Diversified*, 341 Ill. App. 3d at 36, citing *Westcom/Dillingham Microtunneling v. Walsh Construction Co. of Illinois*, 319 Ill. App. 3d 870, 875 (2001). " 'The court, however, must construe the statute as written and may not, under the guise of construction, supply omissions, remedy defects, annex new provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of the language employed in the statute.' " *Northwest Diversified*, 341 Ill. App. 3d at 36, quoting *In re Application of the County Treasurer & ex officio Collector of Cook County*, 323 Ill. App. 3d 1044, 1049 (2001).

"[T]he word 'shall' is generally indicative of a mandatory intent." *People v. Porter*, 122 Ill. 2d 64, 85 (1988), citing *People v. Youngbey*, 82 Ill. 2d 556 (1980). "Similarly, mandatory intent is indicated where a statute prescribes the result that will occur if the specified procedure is not followed." *Porter*, 122 Ill. 2d at 85, citing *People v. Brown*, 142 Ill. App. 3d 139 (1986). Here it is undisputed that, due to an error of the clerk of the circuit court, the order of dismissal was not served upon the petitioner within 10 days of its entry as is required by section 122—2.1(a)(2). "Dismissal of the postconviction petition is void if the trial court fails to comply with the provisions of section 122—2.1." *People v. Rutkowski*, 225 Ill. App. 3d 1065, 1067 (1992), citing *People v. Magdaleno*, 188 Ill. App. 3d 384, 386 (1989). The Illinois Supreme Court, in addressing the timing requirements of this statutory provision, has held that "the requirement that the court enter a written order of dismissal within [90] days after filing is a mandatory requirement." *Rutkowski*, 225 Ill. App. 3d at 1067, citing *People v. Porter*, 122 Ill. 2d 64, 85 (1988). In *Porter*, the Illinois Supreme Court differentiated between the timing requirements in section 122—2.1 within which the trial court must act and the contents of the order that must be entered by the trial court. In discussing the sentencing statutes found under section 5—4—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—4—1(c)) with reference to the case of *People v. Davis*, 93 Ill. 2d 155 (1982), the Illinois Supreme Court in

*Porter* "reasoned that the pronouncement of sentence was at the heart of the judicial function and therefore the legislature was without the authority to dictate its content." *Porter*, 122 Ill. 2d at 82. In applying *Davis* to section 122—2.1, *Porter* explains that "a mandatory interpretation of section 122—2.1 as to the entry of a written order and its contents would violate the doctrine of separation of powers." *Porter*, 122 Ill. 2d at 82, citing *People v. Price*, 144 Ill. App. 3d 949 (1986).

The issue of whether the word "shall" found in the 10-day requirement in section 122—2.1(a)(2) is mandatory or directory was recently addressed by this court in *People v. Ross*, 339 Ill. App. 3d 580 (2003). *Ross* stands for the proposition that " '[t]he ministerial failure of the clerk to enter the judgment into his records does not affect the validity of the judgment.' " *Ross*, 339 Ill. App. 3d at 583, quoting *In re Marriage of Garlinski*, 99 Ill. App. 3d 107, 109 (1981). *Ross* takes care to keep separate those acts that are judicial and those that are merely ministerial. *Ross*, 339 Ill. App. 3d at 583, citing *People v. Redman*, 122 Ill. App. 3d 787, 791-92 (1984). This issue was also recently addressed in *People v. Redmond*, 328 Ill. App. 3d 373 (2002).[1] *Redmond* also stands for the proposition that the 10-day service provision of section 122—2.1(a)(2) is mandatory. *Redmond*, 328 Ill. App. 3d at 377. As did the court in *Ross*, we recognize that the requirement placed on the clerk of the circuit court to serve a defendant like Robinson within 10 days from the entry of the trial court's judgment is ministerial. It is precisely because it is ministerial and not judicial, the concerns in *Porter* and *Ross* about the separation of powers between the legislature and judicial branch of government are not implicated. Therefore, because the 10-day requirement appears within the same section of the Act as the 90-day time requirement for summary dismissals set forth in section 122—2.1(a), we hold that the requirement on the clerk of court to act within 10 days from the entry of the trial court's judgment is also a mandatory requirement. As a result, when the mandates of section 122—2.1 have not been complied with, we have remanded the cause for proceedings in accordance with sections 122—4 through 122—6 of the Post-Conviction Hearing Act. *Redmond*, 328 Ill. App. 3d 373, citing 725 ILCS 5/122—2.1(b); *Magdaleno*, 188 Ill. App. 3d at 387, citing *People v. Nelson*, 182 Ill. App. 3d 1071, 1074 (1989). Even though Robinson's petition is defective on its face and, absent the clerical error, we would not hesitate to uphold the actions of the trial court, we must enforce the statutes as written. To do otherwise would

---

[1]The Illinois Supreme Court recently issued a supervisory order relying on *Redmond*. *People v. Sawczenko*, 202 Ill. 2d 692 (2002).

be to render the 10-day requirement meaningless and would leave Robinson with a right but no remedy for the violation of the statute. In order to remedy the violation in this matter, we choose to adopt the *Redmond* and *Magdaleno* approach and remand the case for a stage-two hearing. Though this may seem mired in futility, it will afford Robinson the opportunity to amend his petition to correct the infirmities. In this way, the State will bear the burden of the error below instead of the incarcerated defendant. Should Robinson, hopefully with the aid of counsel, still be unable to demonstrate a constitutional claim, he will not prevail and the matter will have been litigated error-free to its logical conclusion.

## IV

■ Finally, though it was not raised as an issue by Robinson, the State claims the matter must be remanded for resentencing. The State argues that Robinson's sentences should have been consecutive and not concurrent. The applicable statute at the time of the event reads, in pertinent part, as follows:

> "When multiple sentences of imprisonment are imposed on a defendant at the same time, or when a term of imprisonment is imposed on a defendant who is already subject to sentence in this State or in another state, or for a sentence imposed by any district court of the United States, the sentences shall run concurrently or consecutively as determined by the court. *** *The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury,* *** *in which event the court shall enter sentences to run consecutively*. Sentences shall run concurrently unless otherwise specified by the court." (Emphasis added.) 730 ILCS 5/5—8—4(a) (West 1996).

■ Initially we note that the State did not pursue this matter on direct appeal, though it had ample opportunity. We accept as an axiom that "[a] sentence which does not conform to a statutory requirement is void." *People v. Arna*, 168 Ill. 2d 107, 113 (1995), citing *People v. Mapps*, 198 Ill. App. 3d 521 (1990) (declaring void the portion of a sentence longer than the maximum); *People v. Simmons*, 256 Ill. App. 3d 651 (1993) (declaring void a sentence of probation where not permitted by statute). In *Arna*, the Illinois Supreme Court held that "[b]ecause [an] order imposing concurrent terms was void, the appellate court had the authority to correct it at any time [citation] and the actions of the appellate court were not barred by our rules which limit

the State's right to appeal and which prohibit the appellate court from increasing a defendant's sentence on review." *Arna*, 168 Ill. 2d at 113, citing *People v. Scott*, 69 Ill. 2d 85 (1977). In *Arna*, *Mapps*, and *Simmons*, the prior sentences were, for some infirmity, void and in need of correction. The assumption in those cases, that the prior sentence was void, is precisely that, an assumption. There is no question that the taking of Tommy's life amounts to severe bodily injury. However, even though the trial court indicated prior to sentencing that the gunshot wound to Raleigh was serious, it does not automatically mean the bodily injury was severe for purposes of section 5—8—4(a). Not all gunshot wounds are *per se* severe bodily injury. *People v. Durham*, 312 Ill. App. 3d 413, 420-21 (2000). Despite the fact that Raleigh was shot in the leg, based upon the imposition of concurrent sentences, the trial court must have found no evidence of severe bodily injury. As in *Durham*, Raleigh McNeal's wound does not fit the definition of severe bodily injury. He was only in the hospital approximately three hours before checking himself out and going home. This was a fact that the trial court knew when determining the appropriate sentence. "It is assumed that a judge considers only competent evidence in making a finding." *People v. Kozlow*, 301 Ill. App. 3d 1, 8 (1998), citing *People v. Tye*, 141 Ill. 2d 1, 25 (1990). That assumption holds unless the record demonstrates the contrary. *Kozlow*, 301 Ill. App. 3d at 8, citing *Tye*, 141 Ill. 2d at 25. A review of the record indicates that the trial court relied on proper aggravating and mitigating factors when making the sentencing decision. The imposition of concurrent and not consecutive sentences was supported by the evidence and was not an abuse of discretion nor can it be said that it is "void." *People v. Eubanks*, 283 Ill. App. 3d 12, 25 (1996), citing *People v. Peebles*, 125 Ill. App. 3d 213, 222 (1984); see also *Arna*, 168 Ill. 2d at 115-117 (Nickels, J., dissenting).

## CONCLUSION

In light of the foregoing, the summary dismissal of Robinson's postconviction petition is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

CAMPBELL, P.J., concurs.

JUSTICE QUINN, dissenting:

I dissent. As the majority point out, in dismissing the defendant's postconviction petition at the first stage, the trial court found that the

petition did not have supporting affidavits and its assertions were conclusory. The majority agree with this conclusion and cite *People v. Collins*, 202 Ill. 2d 59, 66 (2002), for its holding that the failure to attach the necessary "affidavits, records or other evidence," as is required by section 122—2 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—2 (West 2000)), justifies the summary dismissal of the petition. The majority state: "[W]e must agree with the trial court that the petition was defective on its face." 343 Ill. App. 3d at 919. This holding should end our analysis and should result in affirming the trial court. By their decision in this case, the majority refuse to follow the dictates of a very recent decision of our supreme court. "[I]t is fundamental to our judicial system that 'once our supreme court declares the law on any point, its decision is binding on all Illinois courts,' and we cannot refuse to follow it because we have no authority to overrule or modify supreme court decisions." *People v. Crespo*, 118 Ill. App. 3d 815, 822 (1983), quoting *People v. Jones*, 114 Ill. App. 3d 576, 585 (1983).

The majority note that the violation of the 10-day notice rule which occurred in this case was the result of the clerk of the circuit court mailing the notice of dismissal two days late. This late mailing resulted in no prejudice to the defendant whatsoever. The defendant timely filed his notice of appeal. In reversing the order of the trial court, an order the majority admit was legally correct, the majority rely on the holding in *People v. Redmond*, 328 Ill. App. 3d 373 (2002). In *Redmond*, the trial court sent out the notice of dismissal more than 90 days after the petition was filed and the defendant learned of the order indirectly more than two months after its entry. *Redmond*, 328 Ill. App. 3d at 375. Upon receiving the defendant's motion to vacate the dismissal, the trial court "relate[d] forward" the date of the dismissal to preserve the defendant's right to appeal. This revised date of the summary dismissal was beyond the 90-day period required by section 122—2.1(a) of the Act. On appeal, the Second District reversed, holding that the 10-day service provision of section 122—2.1(a)(2) is mandatory. *Redmond*, 328 Ill. App. 3d at 377.

In *People v. Crane*, 333 Ill. App. 3d 768, 773 (2002), the Second District distinguished its earlier holding in *Redmond* and held that a violation of section 122—2.1(a)(2)'s requirement of notice within 10 days of a dismissal was harmless where the defendant received the mailing in time to file a timely motion to reconsider. Similarly, as the defendant in this case received the notice of dismissal in time to file a timely motion to reconsider, any error was harmless.

More importantly, a panel of the First District has directly rejected the Second District's holding in *Redmond*. In *People v. Ross*, 339 Ill. App. 3d 580 (2003), this court reviewed a case in which a trial court

summarily dismissed a defendant's *pro se* postconviction petition on January 15, 2001, within the 90-day statutory period. On February 1, 2001 the trial court discovered that the clerk of the court had not sent notice of the dismissal order to the defendant. The court then entered an order directing the clerk to send out notice of the dismissal to the defendant. The court characterized its order as *nunc pro tunc* from January 19, 2001. On appeal, the defendant argued that the trial court's failure to meet the notice provision of subsection 122—2.1(a)(2) rendered the dismissal void based on the holding in *Redmond*.

This court rejected this argument, pointing out that the court in *Redmond* did not discuss the supreme court's explicit holding in *People v. Porter*, 122 Ill. 2d 64 (1988), that the written order requirement of section 122—2.1(a) had to be interpreted as "directory" rather than mandatory due to the separation of powers doctrine. *Ross*, 339 Ill. App. 3d at 584, citing *Porter*, 122 Ill. 2d at 82. The *Ross* court pointed out that the *Redmond* court "held that *every* provision in section 122—2.1 is mandatory, and the failure to serve defendant with a written order within the time period rendered the dismissal void. *Redmond*, 328 Ill. App. 3d at 378." (Emphasis added.) *Ross*, 339 Ill. App. 3d at 584. This holding is clearly contrary to the holding in *Porter*. I agree with the holding in *Ross* and disagree with the holding in *Redmond*; consequently, I would affirm the trial court's dismissal of the defendant's postconviction petition.

The majority explain that they read the 10-day requirement of the statute as being mandatory because "[t]o do otherwise would be to render the 10-day requirement meaningless and would leave Robinson with a right but no remedy for the violation of the statute." 343 Ill. App. 3d at 921-22. In *People v. Cortez*, 338 Ill. App. 3d 122 (2003), this court considered what remedy was available to a defendant when the trial court ordered a postconviction petition to be docketed for further consideration, but the State filed its motion to dismiss more than 30 days after the docketing, in contravention of section 122—5 of the Act. The *Cortez* court considered the holding of our supreme court in *People v. Howell*, 60 Ill. 2d 117, 119 (1975), and *People v. Hendrix*, 54 Ill. 2d 165, 169 (1973). In both of those cases, the supreme court considered what remedy was available to defendants whose state constitutional right to a "prompt preliminary hearing" had been violated. Ill. Const. 1970, art. I, § 7. In both cases, the supreme court noted that the legislature had not provided for a remedy for violation of this "right." In both cases, the supreme court rejected the defendants' arguments that their cases should be dismissed, holding that a dismissal of the charge was not a remedy available to the courts. *Howell*, 60 Ill. 2d at 120; *Hendrix*, 54 Ill. 2d at 169. Also see *People v. Owen*, 323 Ill. App.

3d 653, 660 (2001) (defendant not entitled to rescission of statutory summary suspension of driver's license although the arresting officer did not report the driving-under-the-influence arrest to the sheriff's office as required by section 107—4(a—7) of the Criminal Code of 1963 (725 ILCS 5/107—4(a—7) (West 2000))). In *Cortez*, this court held that when the State fails to file its motion to dismiss within the 30-day time limit in section 122—5, the petitioner is entitled to an evidentiary hearing only where he shows (1) that he objected, at the trial court level, to the State's delay in filing its motion to dismiss and (2) that he suffered prejudice as a result of the State's failure to file a timely motion to dismiss. *Cortez*, 338 Ill. App. 3d at 128. Applying this rationale to the instant case, it makes sense that if a defendant can show that he suffered prejudice due to the failure to receive a notice of the dismissal within 10 days of its entry, his petition should be remanded for further consideration pursuant to sections 122—4 through 122—6 of the Act. As the defendant in this case has suffered no prejudice, he should not be entitled to any relief.

I also disagree with the majority's holding that this case should be remanded to the trial court. Our review of a trial court's dismissal of a postconviction petition without an evidentiary hearing is plenary. *People v. Rissley*, 206 Ill. 2d 403, 412 (2003). While *Rissley* was a capital case and consequently involved a dismissal of a postconviction petition at the second stage, the supreme court has specifically held that our review of a summary dismissal of a postconviction petition is also plenary. *People v. Coleman*, 183 Ill. 2d 366, 387-88 (1998). This court is in as good a position as the trial court to find, as the majority have, that the petition in this case is "defective on its face." 343 Ill. App. 3d at 919.

Finally, I disagree with the majority's characterization of our supreme court's holding in *People v. Arna*, 168 Ill. 2d 107 (1995), and the holding in *People v. Simmons*, 256 Ill. App. 3d 651 (1993), as being based on "assumptions." When we make such a characterization of another court's holding (especially that of a higher court), we should explain our basis for doing so.